## John C. Trainor

### v.

### German-American Savings, Loan and Building Ass'n.

*Opinion filed October 26, 1903.*

1. Evidence—*when books of a corporation are admissible as public books.* The books of a private corporation, as between members of the corporation, are admissible, as public books, as evidence of the election of officers of the corporation and of other corporate acts and proceedings.

2. Same—*when books of corporation are subject to rules applicable to private books.* In a foreclosure proceeding by a loan association against a member, the books of the association are admissible to prove the alleged indebtedness only after such preliminary proof as is required to entitle private books of account to admission.

3. Same—*essentials of preliminary proof where a party making entries does not know their correctness.* If the party who made the entries in a book has no personal knowledge of their correctness but made them from memoranda furnished by another, the latter must testify to the correctness of the items, or there must be other proof of such fact to entitle the books to admission in evidence.

*Trainor* v. *German-American Bldg. Ass.* 102 Ill. App. 604, reversed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Edward F. Dunne, Judge, presiding.

Charles J. Trainor, and Fred S. Moffett, for appellant.

W. J. Lavery, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

This is an appeal from the judgment of the Appellate Court for the First District affirming a decree of fore-closure entered in the circuit court of Cook county on a bill in chancery filed by the appellee association against the appellant.

The appellee association was organized under the act entitled "An act to enable associations of persons to

become a body corporate to raise funds to be loaned only among the members of such association," in force July 1, 1879. (1 Starr & Cur. Stat. 1896, p. 1045.) The appellant became a stockholder in the association and procured three loans from it; which were secured to be paid by mortgages or trust deeds on certain real estate, and he became liable to pay certain weekly installments as dues and certain monthly installments of interest upon this money so borrowed by him. He also became liable to have fines assessed against him in the event he should make default in such payments of dues or interest. The ascertainment of the amount which the association was entitled to be decreed to recover from the appellant involved an examination of the payments of weekly dues and monthly installments of interest so made by the appellant from September, 1890, to the date of the filing of the bill, in 1897, and also as to the payments of various fines assessed against him during the same period on account of alleged defaults in the payments of the dues or interest. There was, however, but little dispute as to payments made by the appellee prior to April 12, 1893, or after July 27, 1895, but between those dates there was sharp conflict in the proof. The truth as to such payments was of material and vital importance to the rights of the parties. During this period from April, 1893, to July, 1895, one Joseph Schlenker was secretary of the association, and continued to serve in that capacity until some time in August, 1899. He was a witness for the appellee company, but at the close of his testimony in chief became ill, mentally or physically, and his cross-examination was deferred for some weeks, during which time he went to California. On his return his testimony was completed, and he soon after became bankrupt and was found to be in arrears with the appellee association in the sum of about $4000.

The association had adopted the plan of providing each member with a pass-book, to be presented by the

member to the secretary of the association on making
any payment of dues, interest or fines, for the purpose of
having the secretary enter in such pass-book the fact
of such payment and the date and amount thereof.   The
appellant subscribed for stock and secured loans on Sep-
tember 24, 1890, January 5, 1891, and February 16, 1891,
and on each of said dates received one of such pass-
books.   On April 12, 1893, the appellant and the proper
officials of the association examined the state of their
accounts, and the appellant surrendered his three pass-
books and the association issued him a fourth pass-book,
on which was transcribed the aggregate of the payments
previously entered on the three pass-books.   On July 27,
1895, the appellant seems to have surrendered this fourth
pass-book and received the fifth pass-book, but the fifth
pass-book did not show any payments which had been
previously made.   The appellant produced the testimony
of a number of different witnesses, and also testified him-
self, to the effect that during the period covered by the
fourth pass-book, each time when he made weekly pay-
ments of dues to the association he paid the sum of $33.50,
and that each time when he paid monthly installments
of interest to the association he paid $67, and that such
payments were entered by the secretary of the associa-
tion on this fourth pass-book.   Said Joseph Schlenker
was secretary of the association during all of the time in
question, and in that capacity received all moneys paid
by the members to the association.

Over the objection of the appellant the association
was permitted to introduce the books kept by its secre-
tary, for the purpose of showing payments of dues and
interest by its members and the status of the accounts
between the association and its members.   These books
contained entries of payments made by the appellant of
only $12.50 per week as dues and only $58.34 per month
as interest during all of the period covered by the fourth
pass-book.   Evidence was produced showing the first,

second, third and fourth pass-books were in the possession of the association at the time of the institution of the suit; that these four pass-books were delivered by the association to one Louis Weber, an attorney at law and solicitor in chancery, whom it had employed to prepare the bill herein for foreclosure against the appellant. Mr. Weber prepared the bill and filed it on December 21, 1897, but early in the course of the litigation became insane and subsequently died, and was succeeded as solicitor for the association by W. J. Lavery. The appellant produced as a witness Mr. John N. Flamming, who testified that he was a clerk and stenographer in the office of Mr. Weber during the time that gentleman was preparing the original bill filed in the cause for a decree of foreclosure against the appellant, and that Mr. Weber then had in his possession four pass-books which had been issued by the appellee association to the appellant; that Mr. Weber told Schlenker, the secretary of the association, that the pass-books did not show the amount due from appellant to be the amount claimed by Schlenker to be due from him; that Schlenker insisted that the books of the association kept by him, as secretary, showed the correct amount to be due from the appellant, but that Weber told Schlenker the pass-books could not be made to show that amount; that the witness, at the dictation of Mr. Weber, prepared the bill for foreclosure in typewriting, leaving the amount claimed by the appellee association from the appellant blank; that Schlenker and Weber had a number of conferences about the matter, and that Schlenker finally told Mr. Weber to put "the figures" as he gave them in the bill for foreclosure, and that Mr. Weber said to him he would have to prove them to be correct on the trial, and directed the witness to insert in the bill the amount as claimed by the books kept by Schlenker, the secretary, and the witness wrote in the amount with a pen. Mr. Flamming made other statements as to the items of payments which appeared upon

the pass-books which tended to support the contention of the appellant upon that point. Mrs. Weber, wife of the deceased solicitor, also gave testimony to the effect that she saw the pass-books in question in the possession of her husband while he was employed as solicitor for the association. The association did not produce the pass-books, though properly notified so to do, but presented proof to the effect it was not within its power to find or produce the books. The master ruled that the books kept by or under the direction of Schlenker, as secretary of the association, were admissible in evidence, and adjusted the accounts between the appellant and the association largely from the items appearing upon the books. Exceptions to such action on the part of the master were overruled, and the amount of the decree was determined upon consideration of the account as shown by the books. The true rule governing the introduction of the books of the association in evidence in support of the claim of the association against one of its members must therefore be determined.

We do not think the books were admissible, on the ground that appellant was a member of the association and its books therefore evidence against him, or that a foundation was made in the proof for the admission of the books as books of account under the provisions of our statute. Section 3 of chapter 51 (Hurd's Stat. 1899, p. 859,) relates to the admissibility in evidence of books of account, and is as follows: "Where in any civil action, suit or proceeding, the claim or defense is founded on a book account, any party or interested person may testify to his account book, and the items therein contained; that the same is a book of original entries, and that the entries therein were made by himself, and are true and just; or that the same were made by a deceased person, or by a disinterested person, a non-resident of the State at the time of the trial, and were made by such deceased non-resident person in the usual course of trade, and of

his duty or employment to the party so testifying; and thereupon the said account book and entries shall be admitted as evidence in the cause."

It appeared in the case at bar that the entries here involved were written in the books of the association by one Herman Muehleisen, who was employed by Mr. Schlenker, the secretary of the association, to do clerical work for him.   Mr. Muehleisen had no personal knowledge of the payments made by the appellant which he recorded in the books.   At the close of each week Mr. Muehleisen would make a list of the names of all the members of the association from whom payments of dues and interest were due to be made during the following week and deliver the list to Mr. Schlenker, the secretary, who would receive all payments made and note the same on the list.   At the end of the week Mr. Schlenker would deliver the list to Mr. Muehleisen with his notations of payments thereon, and Mr. Muehleisen would make the entries on the books of the association from the lists so given him by Mr. Schlenker.   Mr. Muehleisen testified these lists, or pay sheets, as they were called, were kept for a time in the vaults of the association, but that he did not know what had become of them or any of them. None of such pay sheets or lists from which entries had been made were produced.   The entries on the lists or pay sheets were made by Schlenker.   He did not testify the entries on the lists or pay sheets were true, nor was there any testimony to show that the entries as transcribed from the slips to the books were compared with the entries on the lists or pay sheets and found to be correct.

Apart from the inquiry whether, as the slips or pay sheets were kept until the close of the week and then transcribed, the books should be regarded as books of original entries, we think it clear the preliminary proof was not sufficient to justify the admission of the books under and by virtue of said section 3 of said chapter 51, entitled "Evidence," etc.   In *Redlich* v. *Bauerlee*, 98 Ill. 134,

the entries were written on a slate and copied on the books, and we held the books admissible. But the evidence showed that the entries were made by one Keppleberg at the time of the transactions, and that Bauerlee transcribed the entries from the slate on to the books. Keppleberg testified the entries were true and correct, and the proof showed that after the entries were transcribed from the slate to the books Bauerlee and Keppelberg compared the slate and the books, and ascertained that the items on the slate had been correctly copied on the books. In *Chisholm* v. *Beaman Machine Co.* 160 Ill. 101, we held that where the party who makes the entry on the books has no personal knowledge of their correctness, but makes them from items furnished by another, it was essential the party who furnished the items should testify to their correctness, or that such satisfactory proof as the transaction was susceptible of should be made. In 9 American and English Encyclopedia of Law (2d ed. p. 919,) it is said: "In order to entitle a book of account made up of entries transcribed from temporary memoranda to be read in evidence, it has been held that such book must be supported not only by the suppletory oath of the party who made the entries in the book, but that the person who made the temporary memoranda in the first instance, where the entries in both cases were not made by the same person, must also be called to prove that at or about the time the charges were made, articles were delivered or work performed of a character similar to those charged in the book." Tested by these rules thus announced, it is manifest the evidence in the case at bar did not justify the admission of the books of the association in evidence as ordinary books of account.

It is urged that the books of a private corporation, as between the members of the corporation, are of the nature of public books, and for that reason admissible in evidence. Such books are evidence of the election of officers of the corporation and other corporate acts and pro-

ceedings, for the reason the books are for these purposes in the nature of public books or documents. (1 Green-leaf on Evidence, sec. 494; 9 Am. & Eng. Ency. of Law,— 2d ed.—895.) But we think it well, and moreover justly, settled, that the books of a corporation are, as to matters pertaining to the dealings of a corporation with one of its members as an individual, not books of a public nature, and not admissible in evidence in a suit by the corporation against a member to enforce an indebtedness in favor of the corporation upon that ground, but only when brought within the rule established by the statute authorizing the introduction of private books of account in evidence. In *Rudd* v. *Robinson*, 126 N. Y. 113, it was said: "After a careful consideration of all the cases which have come to our attention we can perceive no principle upon which the account books of a corporation can be evidence against a member of the corporation of the accounts and entries therein made, in a suit brought by the corporation or its representatives against him to enforce his liability upon such account. The officers and book keepers of a corporation are in no sense his agents. Individually he has no control over their acts and has no responsibility therefor, and in making the entries they do not, in any legal sense, represent or bind him. * * * It would be quite a dangerous, and we think startling, proposition to hold that a clerk or other officer in a business corporation could enter charges in its books of account against a director or stockholder which could be proved in favor of the corporation by the mere production of the books, thus throwing upon him, or his personal representatives after his death, the burden of explaining the entries or showing them to be untrue, and we believe the doctrine has no support in principle or authority. A corporation seeking to enforce a claim against one of its directors or stockholders must establish it by the application of the same rules of evidence which are applied in an action brought by an individual to enforce a claim

against any defendant." In 9 American and English En-
cyclopedia of Law (2d ed. p. 893,) it is said: "The books
of a corporation are admissible in evidence in a contro-
versy between the corporation and its members in mat-
ters pertaining to the corporate proceeding and acts, but
where the corporation deals with its members as with
individuals,—in which case they sustain the relation of
strangers to it,—the corporation books are not admis-
sible against the members as evidence of such private
contracts and dealings; and in the application of this
principle directors of the corporation and stockholders
thereof stand upon the same footing." The proceeding
at bar has for its end the establishment of an indebted-
ness in favor of the corporation against the appellant,
and the books of the corporation are only admissible in
evidence for the purpose of proving the alleged indebted-
ness of the appellant after the foundation for such admis-
sion has been made by the requisite preliminary proof as
is required to authorize the reception in evidence of the
books of account of a private individual or firm. As we
have before seen, the necessary preliminary proof was not
made, and it was error to accept the books in evidence.

We have stated the condition of the proofs sufficiently
to demonstrate that the error was so prejudicial as to
require reversal of the decree.

As the decree must be reversed and the cause re-
manded to be heard again, other contentions raised and
discussed by counsel need not be adverted to, as the case
may never again come into this court, and if it does, it
must be upon a different record, which may not raise such
contentions, or if it does raise them, will present them
upon a different state of proofs than that now before us.

The judgment of the Appellate Court and the decree
of the circuit court are each reversed, and the cause is
remanded to the circuit court for further proceedings con-
sistent with the views herein expressed.

*Reversed and remanded.*