THE PEOPLE *ex rel.* Ali Stahly *et al.* Relators, *vs.* JAMES J. BRADY, Auditor of Public Accounts, Respondent.

*Opinion filed April 20, 1916—Rehearing denied June 8, 1916.*

1. BANKS—*statute does not authorize organization of bank in an unincorporated village.* Section 11 of the State Banking act, which provides for the organization of banks in cities, towns and villages and fixes the minimum of capital stock required, according to population, refers to incorporated cities, towns and villages and does not authorize the organization of a bank in an unincorporated village.

2. SAME—*Auditor has no discretion to refuse permit to organize a bank if the law authorizes such organization.* The statute has fixed the conditions upon which persons desiring to organize a bank may obtain a permit, and if the law is complied with, the Auditor has no discretion to refuse to issue the permit upon the ground that it will not be for the public good to organize a bank at the particular place referred to in the permit.

FARMER, C. J., and DUNN, J., dissenting.

ORIGINAL petition for *mandamus.*

DEMANGE, GILLESPIE & DEMANGE, for relators.

P. J. LUCEY, Attorney General, and THOS. E. DEMPCY, for respondent.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The questions to be decided in this case are, first, whether State banks can be incorporated under the law of this State in any other localities than in incorporated cities, towns and villages; and second, whether the Auditor of Public Accounts has any discretion to refuse permission to organize a bank on account of local conditions which would render additional banking facilities unnecessary and the organization of a new bank injurious to the public interest. The questions arise upon the petition of Ali Stahly, Albert Fry, J. H. Stauffer and D. Augstin, relators, filed by leave

of court against James J. Brady, Auditor of Public Accounts, setting forth their application to the Auditor for a permit to organize a bank in the village of Carlock, in McLean county, and his refusal to issue such permit. The respondent by his answer admits the application and refusal, and as justification for the refusal alleges that the village of Carlock is an unorganized, unincorporated community, having a population of about three hundred; that it is without industrial enterprises, and there is, and ever since the year 1903 has been, one bank in Carlock furnishing ample banking facilities; that there is no demand or necessity for an additional bank; that Carlock is located on a railroad about ten miles from Bloomington, eight miles from the village of Hudson and six miles from the village of Danvers, all of which have banks and banking facilities accommodating to a great extent the territory surrounding Carlock, and that to permit the organization of another bank would constitute a menace to the banking business there and make both banks unsafe for the stockholders and depositors. To the answer the relators have demurred, and the cause is submitted for decision on the demurrer.

Section 11 of the act concerning corporations with banking powers provides that banks may be organized in all cities, towns and villages, with a minimum capital stock according to the population of such cities, towns and villages, as follows: "In all cities, towns and villages of not exceeding five thousand inhabitants, of $25,000. In all cities, towns and villages of over five thousand inhabitants and less than ten thousand inhabitants, of $50,000. In all cities, towns and villages of ten thousand inhabitants and less than fifty thousand inhabitants, of $100,000. In all cities and towns of fifty thousand inhabitants or more, of $200,000."

The first question raised by the demurrer, as above stated, came before this court upon the application of William Busse for leave to file a petition against James S. McCullough, Auditor of Public Accounts, for a writ of

*mandamus* compelling him to issue a permit to organize a bank at a place which was not in any incorporated city, town or village, and the motion was denied for the reason that the law does not authorize such an incorporation and therefore the Auditor had properly refused to issue the permit. In this case, however, for reasons deemed sufficient to the court, leave was given to file the petition and the question is again before the court for further consideration upon full argument.

There can be no doubt that the cities named in the statute are municipalities incorporated for local government nor that "towns" mean incorporated towns. In seeking for the intention of the legislature the nature of the subject matter must necessarily be considered, and in view of the nature of the banking business townships were not meant. The statute requires the applicants to state in their application their place of business, and if townships were meant, naming any place of business within the township would comply with the statute, which could not have been intended. Cities and towns of certain population necessarily refer to incorporated cities and towns, and the natural presumption is that in adding villages reference was made to incorporated villages. The word "village" has different meanings, and the sense in which it is employed must be determined from other sources than dictionary definitions. In *Hebert* v. *Lavalle,* 27 Ill. 448, where the question was as to the right to the use of the "commons" under ancient grants by the French, English and Colonial governments, it was held that the commons were made appurtenant to the village lots, and a village was defined as "any small assemblage of houses occupied by artisans, laboring people and farmers,—in French villages always by farmers." In *Toledo, Wabash and Western Railway Co.* v. *Spangler,* 71 Ill. 568, where the question was whether the railway company was compelled by the statute to fence its road and make suitable cattle-guards at a highway crossing in a vil-

lage, it was decided that a railroad station where there was a station house, warehouse, one store, a blacksmith shop, post-office and five or six dwelling houses, was a village. In one case the meaning was determined by the sense in which the word was used in the ancient grants, and in the other from the apparent legislative intention concerning the particular subject. It cannot be said that the legislature intended to provide for the location of banks at such places as Sangamon Switch or Sangamon Station because that place was regarded as a village in determining whether the railroad company was obliged to fence its track. The banking business is one that in its nature and uses is connected with places of reasonable population, and while the Banking act prescribes the maximum population and no minimum, the Cities and Villages act fixes a minimum of three hundred inhabitants for the organization of a village, and if incorporated villages were intended there was no necessity for fixing the minimum. If incorporated villages were not intended, banks could be located at any locality where there is a collection of a few houses, which would not correspond with the uses of banks or the banking business. A very forcible reason for limiting the meaning of the act to incorporated villages is found in the provisions concerning population, which imply some lawful and legitimate means of ascertaining population, which in the case of an incorporated village is shown by the Federal census, of which the courts take judicial notice, while an unincorporated village has no specified boundaries and there is no official method of determining the number of inhabitants.

Counsel for relators draw an inference in favor of their position from the history of the legislation on the subject. The Banking act enacted in 1887 provided for organization of banks in incorporated towns, villages or cities not to exceed five thousand population with a certain capital stock, and in all cities, villages or incorporated towns of not to exceed ten thousand population with a greater capital stock,

but made no provision whatever for the organization of banks in places of a greater population than ten thousand. Charles A. Dupee and others filed a petition in this court for a writ of *mandamus* against the Auditor of Public Accounts to compel him to issue a permit to organize a bank in Chicago. The Auditor refused upon two grounds: First, that the act did not apply to cities having a greater population than ten thousand; and second, that the provision of the act in regard to the liability of stockholders was unconstitutional. The court held that neither reason was sufficient and awarded the writ. (*Dupee* v. *Swigert,* 127 Ill. 494.) Counsel for relators say that the decision in that case led to the amendment of the act, which is undoubtedly true, but the decision of the court did not cause the omission of the word "incorporated" in the act as amended. Counsel understand that the court declared section 11 to be in violation of the constitution, but that is a misapprehension. Mr. Justice Magruder in his opinion declared that the classification, whether of banks or of towns, cities or villages, was unconstitutional, but four justices dissented from that conclusion and it was not the opinion of the court. Mr. Chief Justice Craig and Mr. Justice Shope dissented generally, and Mr. Justice Bailey dissented as to that proposition although he concurred in the conclusion that the general intent of the act was to permit the organization of banks in cities having a population of more than ten thousand. Mr. Justice Baker concurred in the dissenting opinion. The opinion of Mr. Justice Magruder and the two justices who did not dissent was that any classification whatever was purely arbitrary and had no foundation in reason, and that the only sort of act that would be constitutional would be one that contained no classification and would permit the organization of a bank at any place in the State with any capital, regardless of whether there were any inhabitants there or not. The opinion concurred in by the majority of the court was that the general scope and purpose of the

act permitted the organization of a bank in a city of more than ten thousand inhabitants, although no provision was, in terms, made therefor. The statute as amended retained a classification for localities and added a provision for the organization of banks in cities or towns of fifty thousand inhabitants or more, which was the evident purpose of the amendment. The decision in that case illustrates the necessity. of determining the legislative intention by the scope and purpose of the act.

It is true that where a statute is amended and a part omitted there is a presumption of an intention on the part of the legislature to repeal the omitted provision, but that presumption ought not to prevail as against the manifest intention of the whole act. The omission of the word "incorporated" in the amended act is of very little significance in this case, because in the original act, while the first words of the section referred to incorporated towns, villages or cities of a certain population, the further provision in the same sentence related to "all cities, villages or incorporated towns," with a greater limitation of population. In the later provision, while the word "town" was qualified by the word "incorporated," the language embraced all cities and villages, without qualification. The amendment was not induced by the opinion of the court in the case referred to so far as any limitation to incorporated villages is concerned, and it did not conform in any particular to the opinion of the minority of the court. Considering the nature of the banking business and the requirements of the public for banks, and all the reasons we have stated, we conclude that the legislative intention was to confine the organization of banks to incorporated cities, towns and villages.

The second ground alleged for refusal to issue the permit is, that the Auditor is invested with a discretion to determine whether it will be for the public good to permit the organization of a bank in a particular place. The act does not give him any discretion but the legislature has itself

fixed the conditions upon which those preparing to organize a bank may obtain a permit.

The writ of *mandamus* is denied.      *Writ denied.*

Farmer, C. J., and Dunn, J., dissenting.