(No. 13487.—Writ denied.)

THE PEOPLE *ex rel.* Charles H. Sergel, Petitioner, *vs.* EDWARD J. BRUNDAGE, Attorney General, Respondent.

*Opinion filed December 7, 1920—Rehearing denied Feb. 3, 1921.*

1. STATUTES—*rule where statute is amended and a part omitted.* Where a statute is amended and a part omitted there is a presumption of an intention on the part of the legislature to repeal the omitted part, and even if the omission was inadvertent it cannot be supplied by the courts.

2. SANITARY DISTRICTS—*provision for six-year term for president of board was repealed by act of 1907.* The omission in section 3 of the Sanitary District act, as amended in 1907, (Laws of 1907, p. 288,) of the provision for a six-year term for president of the board of trustees of the Sanitary District of Chicago, as it appeared in said section 3 as amended in 1905, repealed such provision, and the effect is to create a term of two years for such office, from one regular county election to another, with no provision for holding over.

3. OFFICES—*when a vacancy occurs.* Where an officer is not authorized to hold over until his successor is chosen and qualified, his rights, duties and authority as such officer cease with his term and there is a vacancy.

ORIGINAL petition for *mandamus.*

WILLIS E. THORNE, for petitioner.

EDWARD J. BRUNDAGE, Attorney General, EDWARD C. FITCH, and CLARENCE N. BOORD, (MORTIMER C. GROVER, JOHN W. BECKWITH, and EDMUND D. ADCOCK, of counsel,) for respondent.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Charles H. Sergel, a trustee of the Sanitary District of Chicago and a legal voter, property owner and tax-payer of the district, applied to the court for leave to file a petition for a writ of *mandamus* commanding Edward J. Brundage, Attorney General of the State of Illinois, to file an information in the nature of *quo warranto* calling upon William J. Healy to show by what authority he claimed to hold and execute the office of president of the board of trustees of said sanitary district. The application was accompanied with an information which the applicant had presented to the Attorney General with a request to file the same and evidence of the facts therein alleged and a tender of security for costs, and the refusal of the respondent to receive and file the information. The applicant claimed title to the office with the additional salary of $2500 per annum allowed to the incumbent, and that William J. Healy had intruded into the office without lawful authority. The application was granted and the petition filed. The respondent answered and the petitioner filed a plea to the answer, and the cause was submitted for decision upon a stipulation of the facts and arguments of counsel.

The material facts are as follows: The Sanitary District of Chicago was organized on January 18, 1890, under and by virtue of an act entitled "An act to create sanitary districts and to remove obstructions in the Desplaines

and Illinois rivers." (Laws of 1889, p. 125.) The act provided that there should be elected nine trustees, who should hold office for five years and until their successors were elected and qualified, except the term of office of the first trustees should be five years after the first Monday in December after their election, and the elections after the first should be on the Tuesday next after the first Monday in November in every five years. The act provided for cumulative voting for trustees and that the trustees should choose one of their number president, and the trustees exercised the power by choosing a president for a term of one year. In 1905 section 3 of the act was amended so as to provide that there should be elected at the November election in 1905 nine trustees, three of whom should hold their office for one year, three for three years and three for five years and until their successors should be elected and qualified, and that at every county election after 1905 there should be elected three trustees, who should hold their office for six years and until their successors should be elected and qualified. It prohibited cumulative voting and provided that each elector might vote for and designate upon his ballot cast for trustees one of the candidates for trustee to be president of the board, and the person so designated who should receive the highest number of such votes should be declared elected president; that the president so elected at the November election of 1905 should hold his office for a term of five years and until his successor should be elected and qualified, and any president elected subsequent to the election of November, 1905, should hold office for six years and until his successor should be elected and qualified. (Laws of 1905, p. 198.) In 1907 section 3 was again amended to read as follows:

"Sec. 3. In each sanitary district organized under this act, there shall be elected at the November election, 1905, nine trustees, three of which trustees shall hold their office for a term of one year, three for a term of three years, and

three for a term of five years, and until their successors shall be elected and qualified. At every regular county election occurring after the year 1905, there shall be elected three trustees who shall hold their office for six years, and until their successors shall be elected and qualified, to succeed those whose terms of office shall expire that year. In all elections for trustees each elector may vote for as many candidates as there are trustees to be elected, but no elector may give to such candidates more than one vote, it being the intent and purpose of this act to prohibit cumulative voting in the selection of members of the board of trustees of the sanitary district. Each elector in such sanitary district may vote for and designate (upon his ballot cast for trustees for said sanitary district) one of the candidates for trustees to be president of said board and the person so designated who shall receive the highest number of such votes shall be declared elected president of such board. The person so elected president of such board at the November election of 1905 shall hold office for a term of five (5) years and until his successor shall be elected and qualified. When a vacancy shall occur in the office of president of such board, the board of trustees shall elect one of their number, who shall perform the duties of president until such vacancy shall be filled by an election. When a vacancy shall occur in the office of trustees of any sanitary district organized under the provisions hereof within one year before the expiration of the term of such vacant office, the vacancy shall be filled by appointment by the board of trustees of such sanitary district, but if such unexpired term exceeds one year, the Governor shall appoint the time for an election to fill such vacancy, and shall file a notice of such time with the county clerk of each of the counties in which [such] sanitary district shall be situated," etc. (Laws of 1907, p. 288.)

Subsequent to the year 1905 the only years in which elections were held for the election of president of the

board of trustees were the years 1910, 1916 and 1918, when such elections were held at the regular county election. The relator was elected president in November, 1916. At the election of 1918 James M. Dailey was the candidate of the democratic party for trustee and president and Alexander N. Todd was the republican candidate for trustee and president, and neither one was elected trustee. Dailey received the highest number of votes for president of the board and received a certificate from the county clerk but was not elected to the office of trustee and did not receive a certificate of election, so that no one was elected. On April 16, 1920, at a meeting of the board of trustees, at which the relator presided, one of the trustees alleging that there was a vacancy in the office of president made and put to a vote a motion that William J. Healy should be elected president of the board to fill such vacancy, and the motion was carried. Healy subscribed to the oath of office of president and qualified and has since that date assumed the duties and performed the functions of the office. The office is a public office, and the president of the board receives an annual salary of $7500 and each trustee a salary of $5000, and the president has power to veto ordinances and exercise other powers in addition to those of other trustees.

It is a rule applicable to legislation generally, that where a statute is amended and a part omitted there is a presumption of an intention on the part of the legislature to repeal the omitted provision. (*People* v. *Brady*, 273 Ill. 178.) If that presumption applies under our constitutional provision it is not against the manifest intention of the whole act, and under the provision that the section amended shall be inserted at length in the new act, section 3 as amended was complete and was substituted for the section as it existed before the amendment.

In the argument that the legislature did not intend to omit the provision for a six-year term, attention is called

to the history of the act of 1907 shown by the journals of the senate and house. The amendment originated in the senate in the form in which it was finally enacted and it passed the senate. It was amended in the house by inserting the clause that the term of president should be six years. The senate concurred in the amendment and the bill went to the Governor, who vetoed it upon the ground that the title was incorrect. The senate reconsidered and requested the house to do the same, which the house did and amended the bill by correcting the title and inserting the original senate bill and passed the act as it now stands. The senate concurred and the act was approved by the Governor. This history has no tendency to show that it was the legislative intent that the omitted provision should continue in force, and it is fair to presume that the legislative intention was to do the thing which was done. Even if the omission was inadvertent, it cannot be supplied by the court and the act must be given effect according to its terms.

If absurd consequences result from a particular construction of a statute that construction will be avoided if the statute will reasonably permit of a different one. (*People* v. *City of Chicago,* 152 Ill. 546; *People* v. *Wallace,* 291 id. 465.) As a reason for rejecting the construction limiting the term of president for two years, it is said that such construction would lead to absurd consequences by placing a premium on inefficiency and demoralizing the service because the trustee elected president might be inexperienced and therefore inefficient, and if the act were construed to fix a six-year term the president would become more valuable to the people because of his experience. It does not follow from a construction of the act fixing the term at two years that the electors would select one inexperienced in the duties of the office, but if that might happen there are other material considerations which may have influenced the legislature. The sanitary district, as its title indicates and the duties and powers imposed

and given demonstrate, is very closely related to the interests of the people in respect to health, sanitary conditions and comfort, and this would justify an act making the trustees as nearly as possible immediately responsive to the people. The legislature may have weighed the question of experience against these considerations, and in doing so provided for frequent elections when elections for county officers are held, as they have done in respect to the trustees. In our view, however, the legislature did fix the term of president specifically at two years by the express provision that at each county election the electors should have the right to designate upon the ballot who should be president of the board and exercise the extensive powers given to the president. There would be no more effective way of fixing the term than the provision for an election every two years, when the term of the incumbent would necessarily end.

The important question of the term of office having been determined, there remains the disputed question as to whether there was a vacancy in the office of president on April 16, 1920. Section 125 of the Election law specifies certain events upon the happening of which an elective office becomes vacant before the expiration of the term, and these are all negatived in this case, but they do not fix the time when the term of the relator expired. There is no technical meaning of the word "vacancy," but the rule of the common law, and where not changed by statute, is that there is a vacancy when the term expires. (*Badger* v. *United States,* 93 U. S. 599.) In many cases statutes provide that an officer may hold over after his term until his successor is elected and qualified, and the act contains such a provision as to the trustees but there is none as to the president. Where an officer is not authorized by statute to hold over, his rights, duties and authority as a public officer cease, and not being legally qualified to exercise the powers and perform the duties of the office there

is a vacancy. (Mechem on Public Offices and Officers, secs. 126, 396.) More than a year had elapsed after the expiration of the term of office of the relator, and Dailey, who had the most votes for president, not having been elected a trustee and legally qualified to hold the office, there was a vacancy, which the statute authorized the board of trustees to fill.

The writ of *mandamus* is denied. *Writ denied.*