Alan M. Cooper, Appellee, v. Lester E. Nutt, Appellant.
Gen. No. 8,067.

446

Opinion filed July 5, 1929. Rehearing denied October 10, 1929.

WOOD & WARNER and DAN H. McNEAL, for appellant.

ALBERT M. CRAMPTON and CONNELLY, WELD, WALKER & SEARLE, for appellee; ALBERT M. CRAMPTON and FRANKLIN P. SEARLE, of counsel.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

The plaintiff, Alan M. Cooper, brought an action in debt against the defendant, Lester E. Nutt, to recover a penalty under section 38 of chapter 32 of the Revised Statutes entitled "An Act in Relation to Corporations for Pecuniary Profit." Cahill's St. ch. 32, ¶ 38. This section provides that each stockholder of a corporation shall have the right, at all reasonable times, by himself or by his attorney, to examine its records and books of account; and that any officer or director, who denies permission to do so, shall be liable to the stockholder so denied in a penalty of 10 per cent of the value of the stock held by such stockholder.

The declaration, as amended, charges that on May 29, 1924, the plaintiff was the owner of 200 shares of stock of the Moline Iron Works, an Illinois corporation; that said stock was of the value of $40,000; that on May 29, 1924, at the hour of 10 o'clock in the forenoon and again at 2 o'clock in the afternoon, he requested permission of the defendant, Lester E. Nutt, who was

then president and a director of said corporation, to permit the plaintiff or his attorney to examine the records and books of the corporation; that the defendant refused the plaintiff the privilege of examining such records and books; wherefore the plaintiff is entitled to recover from the defendant the penalty provided for by statute.

The declaration contains three counts. A demurrer to it was overruled, whereupon the defendant filed a plea of the general issue and three special pleas. The plaintiff interposed a demurrer to the special pleas. The demurrer was sustained as to the second plea and overruled as to the third and fourth pleas. The third plea averred that the request to examine the books and records was made in writing and was in words and figures following:

"May 29, 1924.

"Moline Iron Works, a corporation
Moline, Illinois.

"I hereby authorize and request you to permit and allow J. F. Harper and G. H. Gundaker, or either of them, to examine the books of the Moline Iron Works, a corporation, of which I am a stockholder, for and in my behalf.

"They are authorized to examine said books for me.
ALAN M. COOPER."

The plea further averred that the defendant as president of said corporation granted to said J. F. Harper the request so made in writing and directed him to the secretary of the corporation, who had custody of the books and records, but the said Harper did not avail himself of the privilege granted.

The fourth plea averred that the request was made in writing as above set out and that G. H. Gundaker, named in said written request, was not an attorney licensed to practice law, but was an accountant; that J. F. Harper, also named in said written request, was a licensed attorney at law and that the defendant

granted the said J. F. Harper privilege of examining the books and records of the corporation, but that the said Harper failed to avail himself of said privilege. Both pleas concluded with a verification.

A *similiter* was filed to the plea of the general issue and replications were filed to the third and fourth pleas. A demurrer was sustained to the replications and amended replications were thereafter filed, traversing the third and fourth pleas. The defendant filed a *similiter* to each of them.

Afterward plaintiff obtained leave of court to reply double to the defendant's third and fourth pleas, and, in accordance with such leave, filed a replication in which it is averred that the plaintiff ought not to be precluded in his action because the request declared on in his declaration was not and is not the request in writing set forth in the third and fourth pleas.

The defendant treated this replication as a replication of new assignment and filed three pleas to it. The first amounts to the general issue. The second averred that J. F. Harper was the only attorney at law for whom plaintiff made a request for permission to examine the books and records of the corporation and that Harper was given such permission but refused to exercise it. The third set out the above-mentioned written request and averred that permission was granted to the said Harper to make the examination; that said permission was still outstanding and not withdrawn, and that plaintiff had no right to demand an examination to be made by any person other than Harper. A *similiter* was filed to the first plea and a demurrer was sustained as to the second and third pleas. Defendant elected to stand by his said second and third pleas.

After the issues were thus made up, the defendant entered a motion to dismiss the suit on the ground that the so-called replication of new assignment stood as an amended declaration and was an abandonment of

the cause of action stated in the original declaration, as amended; that the replication of new assignment should set forth the new cause of action with the same degree of certainty as is required in an original declaration and that it fails to do so. The motion was denied and a trial by jury resulted in a verdict in favor of plaintiff for $3,305. Judgment was rendered on the verdict and this appeal followed.

This case may be considered under two general divisions, first, should the court have allowed defendant's motion to dismiss the suit because of the situation produced by the alleged replication of new assignment and, second, if not, then is the judgment right upon the merits?

The multiplicity of pleading in this case may be briefly summarized. Plaintiff charged that defendant, as president and director of the Moline Iron Works, refused to permit him or his attorney to examine the records and books of account of said corporation. Defendant filed pleas denying a refusal but averring that the plaintiff had requested in writing that J. F. Harper and G. H. Gundaker be permitted to examine the books in plaintiff's behalf; that Gundaker was not a licensed attorney at law and that Harper, who was an attorney at law, was granted permission, but failed to avail himself of it. Demurrers to these pleas were overruled and this left plaintiff in a position where he could raise no issue and offer no proof in connection with Gundaker. He had been driven by the pleadings to a point where the issue had to be decided on the proof of a denial of permission to Harper. He was not content with this situation and he accordingly obtained leave of court to reply double. He had already filed a replication traversing the averments of defendant's plea with respect to Harper and now, under leave to reply double, he filed a replication in which he averred that the written request set up in defendant's pleas was not the request declared on. If this replication was a suffi-

cient one, it gave plaintiff an opportunity to offer whatever proof he had concerning Gundaker. The declaration charged that a demand for leave to examine the books was made in the morning of May 29, 1924, and again in the afternoon of that day. It nowhere averred the names of plaintiff's attorneys. Their names were first brought out by defendant's pleas and certainly it was proper for plaintiff to deny that he relied upon the demand or request mentioned in defendant's pleas.

In our judgment, such a denial by replication was not a new assignment. The replication assigned no new cause of action. It was a special traverse of matter contained in defendant's third and fourth pleas. Proof necessary to establish that replication would be competent to support the averments of the original declaration. The replication should not have been treated as a replication of new assignment, and it was not subject to demurrer on the ground that it did not possess the particularity required of a declaration. The plea of the general issue filed to such replication should be treated merely as a *similiter*. We cannot agree with appellant's contention that the plaintiff, by filing the replication in question, abandoned the original amended declaration.

A replication of new assignment is improper when the declaration complains of a single trespass. Chitty on Pleading, vol. 1, page 628, 12th American Edition says: "It will be observed that the very circumstance of the new assignment supposes that two or more trespasses or acts apparently amounting to trespass have taken place. The plaintiff declares in the new assignment that he brought his action, not for the trespass admitted and justified by the plea, but for another and different trespass committed upon another and different occasion, and which the defendant has not answered by his plea." And on page 629, the following text appears: "Whenever the plaintiff and defendant

are agreed as to the particular trespass or place and there appears sufficient upon the record to ascertain and identify it, a new assignment is unnecessary and improper.'' On page 631, it is said: ''It will be observed to be perfectly clear that the mode of pleading by traverse and new assignment is inapplicable where only a single act of trespass is complained of in the declaration.''

In the case at bar, the declaration complains of only a single refusal of permission to examine the books of the corporation. The language in each of the three counts of the declaration, with respect to the demand and refusal, is identical and is, substantially, that the plaintiff on the 29th day of May, A. D. 1924, at 10 o'clock in the forenoon, and again at 2 o'clock in the afternoon of said day, requested permission of the defendant to examine the said records and books of account; but the defendant, Lester E. Nutt, who was then and there president and director of said corporation, refused to permit or allow said plaintiff or his attorney the right or privilege to examine said records.

It is therefore apparent that only one act of the defendant is complained of in the declaration and that the cause of action is based solely upon that act. Such being the case, the replication could make no new assignment and it was a mistake to treat it as though it had done so.

The record discloses substantial agreement as to the facts involved in the case. Plaintiff was the owner of 150 shares of common and 50 shares of preferred stock of the Moline Iron Works, the principal office of which was in Moline, Illinois. He desired to have an examination made of its records and books of account. He had employed Gundaker, a certified public accountant of Chicago, to make the examination. He caused J. F. Harper, a lawyer, to assist in obtaining leave to make the examination. Harper prepared the written request set out in the pleadings and on May 29, 1924,

plaintiff, Harper, and Gundaker, at about 10:30 o'clock in the morning, called upon the defendant at the office of the corporation. Defendant was introduced to Gundaker and was informed that Gundaker was a certified public accountant. A written request was then handed defendant and he testified that he told Harper he could examine the books but that Harper declined to make the examination, because, as he stated, he was not qualified to do it and knew nothing of accountancy. Defendant further stated that before he would allow Gundaker to examine the books, he must first ascertain whether or not Gundaker was competent and connected with a reputable firm of accountants. Gundaker gave references in behalf of the firm with which he was connected and made a statement of his own personal qualifications. No definite conclusion was reached at this meeting and in the afternoon plaintiff and Gundaker came back to defendant's office. Harper was not with them. Plaintiff inquired if Gundaker would be permitted to make the examination and defendant replied that he was not yet satisfied with Gundaker's qualifications, but admitted that he had communicated with an accountant in Chicago and had learned nothing detrimental about Gundaker or his firm. Plaintiff pressed defendant for an answer and finally defendant definitely refused permission.

It therefore appears from the evidence that (1) the defendant gave permission to Harper to examine the books but Harper declined the offer on the ground that he was not an accountant and unable to make a satisfactory examination, and (2) that defendant declined to grant Gundaker permission to examine the books on the ground that he was not satisfied with Gundaker's qualifications.

The right of a stockholder to examine the records and books of account of a corporation, either by himself or his attorney, is an absolute one. The only

limitation made by law upon that right is that the examination will be conducted at reasonable times, and the only right provided by statute to refuse permission to examine at such times is that the stockholder has sold or offered to sell a list of the stockholders of such corporation or of some other corporation, or has aided or abetted another in procuring a stock list for the purpose of sale. The evident purpose of the law is to give a stockholder the right to obtain information concerning the conduct of the business of the corporation which can only be disclosed by an examination of the records. It would indeed be giving the statute a restricted interpretation to say that the corporation or its officers are clothed with authority over the selection of an examiner. That power of necessity belongs to the stockholder. He can either make the examination himself or empower his attorney to do it. His decision in making the selection is exclusively within his province. The corporation and its officers cannot pass upon the qualifications of the examiner, and this is true whether the examiner is the stockholder himself or his attorney. If the attorney of the stockholder's selection refuses to act, either because of unwillingness or because of his admitted lack of capacity for the particular task, the stockholder must have the right to appoint another—otherwise his desire to examine the books would be thwarted. So, in this case, the defendant would not consent to an examination of the books by both Gundaker and Harper. Then the latter refused the offer of permission on the very reasonable grounds that he was not an accountant and did not consider himself qualified to examine the books of the corporation. Even if Harper had been the only one named in the written request, can it be doubted that plaintiff had the right to substitute another attorney after Harper's refusal to act? If the attorney proposed could not act for any reason, it be-

came plaintiff's duty to suggest another to the defendant, and likewise, it would be the duty of the defendant to accept such suggestion.

But the real point at issue is whether or not an action can be predicated upon defendant's refusal to permit Gundaker to examine the records. According to the pleas, the refusal was based on the fact that Gundaker was not a licensed attorney at law, but according to the uncontradicted evidence, it was based on the ground that the defendant was not satisfied with Gundaker's qualifications as an accountant.

The briefs have given much attention to authorities which attempt to define the word "attorney." It is the claim of the plaintiff that the term as used in the statute is to be construed in its broad and comprehensive sense, and means an agent or anyone appointed by the stockholder to make the examination. The defendant insists that the term includes only licensed attorneys at law. In determining the controversy, we must look to the purpose and object of the statute. The enactment is for the sole and exclusive benefit of a stockholder. No other purpose for it can be conceived. Its object is to enable him to obtain an insight into the corporation's management by an examination of the records which are prepared by the officers of the corporation and are largely within their exclusive possession and control.

The law would be a futile one if it did not contemplate that the stockholder be given the right to make an intelligent and searching investigation. Its aim would be defeated unless a stockholder could impose the task of making the examination upon someone who is thoroughly competent to do the work. It is no reflection upon the legal profession to say that a vast majority of its members make no claim to qualifications for examining the books and accounts of large corporations. If there be any who have sufficient qualification, it is not likely that they would care to devote the large amount of time necessary to make an

examination. In this active period of the world, the business of accountancy has become a recognized profession. It is taught in the colleges and universities. It is a specialized occupation. Everyday experience reveals the fact that federal, state, and municipal governments, businesses of all kinds, including corporations, employ certified accountants to examine their records and to reach proper mathematical conclusions concerning the financial condition of the institution. Because of sheer necessity, it is seldom done in any other way. In view of Harper's refusal to examine the books, the subsequent oral demand that Gundaker be permitted to examine them is the one upon which this case must rest.

It would be unreasonable to hold that the statute was so restricted and exclusive in its import that no one but a practicing attorney at law could be appointed by a stockholder to examine an intricate set of books of a corporation. The statute must be interpreted so as to give effect to its purpose and to avoid absurdities. If absurd consequences result from a particular construction of the statute, that construction will be avoided if the statute will reasonably permit of a different one. (*People v. Brundage,* 296 Ill. 197; *New York Cent. R. Co. v. Stevenson,* 277 Ill. 474; *People ex rel. Hamilton v. Illinois & Michigan Canal,* 4 Ill. [3 Scam.] 153; *People v. Wallace,* 291 Ill. 465.) While the statute involved in this case is penal in nature and must be strictly construed, the rule does not compel courts to take such an unreasonable view of a law as will defeat its object. (*Meadowcroft v. People,* 163 Ill. 56; *Gillock v. People,* 171 Ill. 307.) The term "attorney" as here used must be given its ordinary meaning and not its restricted meaning if the statute is to be of any avail to the only persons it is designed to help. Hence, it is our conclusion that under the facts in this case, the refusal of the defendant to permit Gundaker to examine the books was in violation of law.

458

With this conclusion in view, we hold that the trial court correctly gave plaintiff's instruction No. 3 which told the jury that if the plaintiff requested the defendant to permit Gundaker to examine the books and the request was refused by the defendant, the issues should be found for the plaintiff, and it was also correct in instructing the jury that the word "attorney" as used in the statute means any agent of the stockholder appointed for the purpose of making an examination.

From what we have already said concerning the pleadings in this case, it follows that we do not believe the third and fourth pleas to the second amended declaration present a complete bar to the action. The difficulty with the pleadings arises from the fact that the demurrer to the fourth plea should have been sustained, because it was no defense that Gundaker was not an attorney licensed to practice law. The trial court, in its instructions, so held, but it overruled a demurrer to that plea.

In an effort to establish the value of the stock owned by plaintiff, so that a proper basis could be arrived at for fixing defendant's penalty, certain records and books were produced by the defendant pursuant to notice given him. It is urged by the defendant that these books were offered in evidence without any proper foundation having been laid. The stock of the Moline Iron Works at the time the demand was made was not listed on any recognized curb or stock exchange. It may be accurately said that it had no market value. The corporation was prosperous and it is admitted that the common stock was worth considerably more than par. Resort had to be made to the best obtainable sources for evidence of value. Little trading was done in it and the production of the records of the company was sought in order to ascertain its book value. To arrive at that value, consideration had to be given to the assets, liabilities, and earnings of the corpora-

tion. (*Gorham v. Massillon Iron & Steel Co.*, 284 Ill. 594.)

Plaintiff's exhibit "1" was a balance sheet of the corporation and as a matter of evidence was highly competent, but it is objected that no proper foundation was laid for its introduction. The defendant testified that the balance sheet was a document prepared and kept by the corporation in the usual course of its business and that according to his knowledge and belief, correctly represented the financial condition of the corporation at the close of the fiscal year, June 30, 1924. In a suit of this character, such testimony constitutes a sufficient foundation for the introduction of the document. The rule laid down in *Trainor v. German-American Sav., Loan & Bldg. Ass'n*, 204 Ill. 616, has no application to such a situation as is here presented. That was a suit on an open account and the ordinary rules with respect to the correctness of charges were properly invoked. The instant case involves no charges or accounts against the parties to this suit. The evidence disclosed by the balance sheet relates solely to the financial condition of the corporation. The proof is clear that it was prepared by the officers of the corporation, kept in its usual course of business, and produced on the trial by the president of the corporation. No error was committed in admitting it in evidence.

Defendant's exhibit No. 2 was excluded. It was a letter written almost two years after plaintiff's demand for an examination of the books. The letter contained a proposal of the plaintiff to sell his stock at certain prices. These prices are less than those which plaintiff claims was the fair value on May 29, 1924. The exclusion of the exhibit was correct. There had been no proof offered to show that the financial condition of the company remained substantially the same during the interim. It is obvious that it would be im-

proper to admit evidence to show that the stock had either advanced or fallen by February 27, 1926. The date is remote from May 29, 1924, and it is as to the value on the last-mentioned date that the inquiry must be directed. For the reasons here expressed, we also regard as correct, the court's exclusion of the evidence of plaintiff on cross-examination as to the price at which he had bought and sold stock of the Moline Iron Works at later dates. The penalty fixed by the jury's verdict appears to have a sufficient basis in the evidence and is not excessive. It would prolong this opinion beyond proper length to further discuss the objections raised to the method employed by plaintiff in fixing the value of his stock. Without any attempt to ignore such objections, the evidence, upon this subject, offered by the plaintiff was, in our opinion, material and competent.

It is the claim of defendant that the court instructed the jury that a verdict for plaintiff could be founded on a preponderance of the evidence. Defendant's counsel insist that the instructions to that effect are erroneous, and that they should have advised the jury that the weight of the evidence must go beyond a preponderance and establish the facts by "full and complete proof." Whatever may have been the earlier rule in regard to the quantum of evidence necessary to warrant a verdict in a case of this character, it is now well settled that a preponderance of the evidence is sufficient. Supplying qualifying terms to the word "preponderance" in instructions is now generally condemned. The use of the adjectives "full," "complete," "clear," and the like in connection with that word is now generally disapproved. (*Teter v. Spooner* 305 Ill. 198; *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207.)

In civil cases where a defendant is charged with a crime, it is no longer the rule that the proof of the com-

mission of the crime shall be beyond a reasonable doubt. The Supreme Court has definitely decided that point in cases where a misdemeanor is charged. (*Rost v. F. H. Noble & Co.*, 316 Ill. 357, 371.) And in *People v. Small*, 319 Ill. 437, that court refrained from holding that it obtains even in cases where a felony is charged.

Feeling that the verdict is well supported by the evidence touching the issues properly triable in this case, and that no substantial error appears in the record, the judgment of the trial court is affirmed.

*Judgment affirmed.*