MABEL M. WINTER *vs.* ABRAHAM HINDIN, Constable, and WILLIAM J. RYAN and ROSE L. RYAN, Landlords.

*(December 9, 1926.)*

PENNEWILL, C. J., RICHARDS and RODNEY, J. J., sitting.

*Harry K. Hoch* for plaintiff.

*C. Stewart Lynch* and *John J. De Luca* for defendants.

Superior Court for New Castle County, September Term, 1926.

No. 126, September Term, 1926.

RODNEY, J., delivering the opinion of the Court:

The plaintiff advances three reasons for the illegality of the levy which will be taken up in order.

First, the plaintiff argues that the distress warrant was issued against George L. Winter and Mabel M. Winter; that the debt being that of George L. Winter and he being the sole lessee of the premises, the wife, Mabel M. Winter, not being a party thereto, Mabel M. Winter was improperly joined therein. The plaintiff argues that the right to distrain for rent is analogous to and dependent upon the right to maintain an action for the rent and that, as Mabel M. Winter was not a party to the lease, and since the rent was not a debt of hers, that the warrant and distress for rent were illegal. The error in this argument is the basic misconception of a distress for rent.

A distress for rent is one of the oldest proceedings known to our law, traceable, perhaps, as Lord Halsbury says, to the Norman Conquest. As originally known to the common law, the distress was simply a taking into the possession of the landlord of any personal property on the premises as a pledge for the payment of the rent or the rendering of the service due by the tenant. There was no power of sale by the landlord of the distrained goods until given by the *Statute 2 Wm. & Mary C. 5, in* 1689. For this reason the older law did not operate so harshly on the goods of a stranger found upon the premises for since they could not be sold and as their mere retention had no effect in compelling compliance by the tenant the goods of the stranger were generally returned by the landlord.

A distress for rent is not, in Delaware, a judicial action or proceeding. It is simply a summary remedy by which a landlord is entitled, by his own act alone and without judicial process, to take into his possession personal property found upon the demised premises, subject to certain statutory exceptions, and, if not re-plevied, to sell the personal property so seized to discharge the unpaid rent. Our distress is an extrajudicial statutory remedy, declaratory of the common law, to enforce the payment of an arrearage of rent. There are no parties, properly speaking, to a distress it being an *ex parte* proceeding in *rem*.

A distress warrant, in so far as this case is concerned, has little significance. The landlord can distrain for the rent himself. *Rev. Code of Del.* § 4554. In such case there is, of course, no warrant. If the landlord does not choose to personally distrain he may appoint any one to act for him. In such case there may but need not be a distress warrant. It is simply a power of attorney for the bailiff to act on behalf of the landlord and clothes the bailiff with authority to make entry upon the premises. *Bagwell v. Jamison, Cheves (S. C.)* 249. Unless evidence of authority is required by the tenant, it is not even necessary that a bailiff should have an express antecedent authority before making a distress, for a distress made without previous authority may be afterwards recognized and adopted by the landlord and such adoption relates back to the time of taking the distress and will be as effectual as a previous authority would have been. *Halsbury's Laws of England, vol.* 11, *p* 160, and cases there cited.

There is no analogy so far as parties are concerned, between a distress for rent and an action brought to recover rent which results in a personal judgment.

Secondly, the plaintiff argues that the bankruptcy of the tenant George L. Winter and the resulting opportunity on behalf of the landlord to file proof of the claim for rent barred the right to distrain for the rent. The plaintiff contends that a landlord has no lien upon the goods upon the premises until he has made his right an active one by actual seizure under a distress for rent and that this right and lien cannot be perfected after the adjudication

of the bankruptcy, and to support this contention cites several authorities. 16 *R. C. L.* 1012; 36 *C. J. p.* 556; *Morgan v. Campbell,* 22 *Wall.* (89 *U. S.*) 381, 22 *L. Ed.* 796. In *re Bishop* (*D. C.*), 153 *F.* 304; *In re Schapiro* (*D. C.*), 286 *F.* 620.

That a distress at common law was a dormant right or privilege and created no lien upon the goods or chattels until actual seizure has been held by this Court in *State v. Gould* (*Del. Super.*), 127 A. 506.

Whether the adjudiciation of George L. Winter as a bankrupt prevented the operation of the distress for rent calls for a construction of the Bankruptcy Law and a consideration of the objects of it.

*The Bankruptcy Act* (*U. S. Comp. St.* §§ 9585-9656) has in view two objects:

(1) To secure possession of an insolvent's assets and procure their equitable division among creditors, preventing and avoiding attempts of one creditor to obtain advantage over other creditors; and

(2) To free a worthy debtor who has given up all his property toward the satisfaction of his debts and has truthfully revealed all information with relation to his affairs from the burden of his unpaid debts.

The purposes of the act are placed in this order because such is their historical importance and rank. Release from debts which now appears often to be the chief end of bankruptcy was anciently not a part of the act at all nor allowed by it. An interesting account of the development of the purposes of the Bankruptcy Act may be found in the Introduction to Remington on Bankruptcy.

Now it would seem that any objection that the distress for rent is violative of the purpose or spirit of the Bankruptcy Law must be based upon one of two theories: (a) That it is in conflict with that purpose of the act which avoids attempts of one creditor to obtain advantage over other creditors, or (b) that the adjudication of the tenant, George L. Winter, as a bankrupt operated as a discharge of the claim of rent other than out of the bankrupt's

estate so that there remained no legal claim for rent to constitute a basis for the distress.

It is conceded in the agreed statement of facts that the bankrupt had no goods upon the demised premises but that all the chattels belonged to Mabel M. Winter, his wife, plaintiff herein. It is, therefore, apparent that the landlord does not seek to obtain advantage over other creditors of the bankrupt nor does the distress for rent reduce the amount of the bankrupt's estate. Its tendency would be rather, to increase the amount of the estate for if the claim of the landlord be met by a distress upon the goods of a stranger found upon the demised premises then an additional amount, equivalent to the amount of the rent, would be distributable among the other creditors of the bankrupt. All of the authorities cited by the plaintiff on this branch of the case dealt with a distress for rent solely against goods of the bankrupt. They are all based upon the principle that the goods of the bankrupt after adjudication in bankruptcy are "in *custodia legis*" and therefore, immune from a distress for rent. With this principle we are in thorough accord, but it has no application in this case.

We are of the opinion also that the claim of the landlord for the rent was not so barred by the adjudication of bankruptcy that it could not sustain the distress. For this conclusion two reasons may be assigned.

■ The agreed facts stipulate that the distress for rent was laid after the adjudication of bankruptcy and before the discharge of the bankrupt. Now no debts of a bankrupt are ever barred upon an adjudication. It is only the discharge of the bankrupt that has this effect and that may be pleaded in bar of an antecedent claim. But it is equally true that the claim itself is never extinguished. A discharge in bankruptcy is not a payment of an antecedent claim nor an extinguishment of the debt. It is simply a bar to their enforcement by legal proceedings. *7 Remington on Bankruptcy* 454, § 3448; *Champion v. Buckingham*, 165 *Mass.* 76, 42 *N. E.* 498; *Collins v. McWalters*, 35 *Misc. Rep.* 648, 72 *N. Y. S.* 203; *Smith v. Cook*, 71 *Ga.* 705; *Alabama, etc., Co. v. Crawley*, 118 *Miss.* 272, 79 *So.* 94.

We are, therefore, of the opinion that the legality of the distress for rent is not affected by the bankruptcy of the tenant, George L. Winter. We believe in so holding we are giving a construction to the Bankruptcy Act which preserves to the bankrupt the full measure of benefit arising from his discharge and yet does not deprive the landlord of the remedy given him by the Laws of Delaware. A different construction, viz., that the chattels of a third person upon the demised premises were exempt from distress for rent would mean that such third person, though a stranger to the bankruptcy proceeding, would alone take all the benefit of the Bankruptcy Act and would contribute nothing.

The third and most important question yet remains involving a construction of our statute authorizing a distress for rent.

For over 100 years the statute being *Section* 4556 *of Revised Code of* 1915 had been in part as follows:

"A distress may be made as well of the grain, grass, and other produce found upon the premises out of which the rent issues, or upon which it is charged, whether growing or severed, in sheaves, stacks, or otherwise, as the horses, cattle and other goods and chattels [being upon said premises; except goods and chattels] not the property of the tenant, but being in his possession in the way of his trade, or upon the said premises in the regular course of any occupation, or business, there carried on; which exception shall extend to." etc.

This last mentioned exception covers a number of particulars such as the property of a boarder in a boarding house which are not material to a determination of this case. The Legislature of 1925 desired to add another exception at the end of the section excepting goods upon a premises under a conditional sales contract. *Paragraph* A, *of Section* 4906, *of Revised Code*, provides that an amendment shall be made by repealing the entire section and substituting a new section as it is desired to be amended. The Legislature of 1925 (34 *Del. Laws*, c. 233) formally repealed *Section* 4556 and re-enacted the entire section adding to the end of the section the amendment desired with the very important error that it omitted eight words of the existing act being the eight words in brackets in the foregoing extract.

The question for determination is whether those eight words can be read into the act or, if not, what construction can be put upon the amended statute.

In considering this matter there are several general principles to be kept in mind. The primary rule of statutory construction, as indeed of the construction of any written instrument, is to ascertain the intent or thought which the instrument expresses. The intent of the statute, being in itself the law, it follows that the object of all interpretation is to find out that intent. *Lewis' Sutherland on Stat. Const.* (2d Ed.), § 363; *Capelle & Duncan v. Baker*, 3 *Houst.* 344, 354.

In ascertaining the intent of the Legislature in passing the amendatory act we propose, briefly, to consider two subsidiary principles of construction as tending to conclusively establish such intent.

In construing an amendatory act, such as ours, the Court will seek the intention of the Legislature by looking to the occasion and necessity for the law and the circumstances under which it was enacted, to the mischief to be remedied, the object to be obtained and by looking to the old law on the subject and the remedy in view. 25 *R. C. L.* 252; *Con. Guaranty Corp. v. People's Bus Line*, 31 *Del.* (1 *W. W. Harr.*) 595, at 605, 117 *A.* 275.

It will not be presumed that the Legislature intended to overthrow long-established principles of law unless such intent shall clearly appear. *Jewell v. Ithaca*, 36 *Miss. Rep.* 499, 73 *N. Y. S.* 953.

A consideration of these principles inevitably leads to an examination of the Delaware statutory enactments relative to a distress for rent.

"Subject to certain exceptions," the statutes "of Delaware," have "made the goods of a third party found on leased premises subject to rent distraint. * * * For generations this has been the policy, usage, and recognized law of that state in renting. Indeed it was brought into the province in Colonial times." *In re Brittingham Mfg. Co. (C. C. A.),* 3 *F.* (2d) 807.

It seems unnecessary to trace the legislative policy beyond the Act of 1829. On February 10, 1829 (*Volume 7, Laws of Delaware, p* 346) the Legislature passed an act in substantially the same form

as existed until the amendment of 1925, under discussion. There has been hardly, even, the pruning of the phraseology. The statute was continued in the Codifications of 1829, 1852, 1874, 1893 and 1915. The same statute exists, verbatim, in the amendatory act of 1925, with the exception of the omission of the eight words hereinbefore referred to. The omission of these words, however, would completely nullify and reverse the legislative will and intent evidenced through an unbroken century of statutory enactment. Through all these years all the goods of the tenant were liable to distress as were the chattels of a third person with certain specified exceptions. With these words omitted only the produce of the tenant raised upon the demised premises is liable to distress and the exception itself being omitted the goods of a stranger being upon the demised premises solely by way of trade, theretofore exempt from distress, become almost the sole property liable to distress. While the exception is omitted the later reference as to what the "exception shall extend to" is plainly indicative of the intent that the exception should be a part of the statute. We are clearly of the opinion that the omission was not the intent of the Legislature and that the statute should not be so construed unless such intent should clearly appear. We are of the opinion that the intent of the Legislature is plain and that the omission of the words was a clerical error. The manner of its happening is not difficult to comprehend. As we have shown it was necessary, under *Section* 4906, that the section be recopied in *extenso*. The omitted words happened between the word "chattels" twice appearing. It was purely the work of a careless copyist allowed to be perpetuated by imperfect supervision.

Having arrived at the conclusion that the intent of the Legislature is apparent that the distress for rent statute was to have remained intact, with the additional exception of goods upon a demised premises under a conditional sales contract as being immune from a distress, it now becomes necessary to consider briefly whether the omitted eight words may be supplied. We know of no situation calling more imperatively for the application of the doctrine of *"ut res magis valeat quam pereat."* "That the

thing (the statute) may prevail rather than be destroyed" has long been a maxim acted on by the Courts. In conformity with this maxim the general rule is that where words have been omitted from a statute by inadvertence or through clerical error and the intent of the Legislature is ascertainable from the context, the Court will insert the words necessary to carry out that intent. An exception to this rule is that a Court will not insert words in a statute the meaning of which can be ascertained only by conjecture. This exception is, we think, without application, leaving the general rule in its full force.

Extended citations of the many instances in which Courts have supplied apparent omissions in statutes can serve no useful purpose. Comprehensive notes fully sustaining the right of the Court to make such interpolations are found in 3 *A. L. R.* 404; 1 *Ann. Cas.* 752; 26 *A. & E. Encyc.* (2d Ed.) 653. The citations present instances where interpolations have been made by the Courts, varying from one to fourteen words, where the apparent intent and will of the Legislature was utterly defeated by such omission.

Having, with no difficulty whatever, arrived at the intent and will of the Legislature and realizing that such intent can only be carried out by supplying the words inadvertently omitted we readily supply those words and give to the Act the full measure of potency and force intended by the lawmaking branch of the State Government.

Judgment will be entered in favor of the defendants for the sum of $310, besides costs.