(No. 30045.—▮▮▮▮▮▮▮
THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellee, *vs.* O. C. JARMUTH, Appellant.

*Opinion filed September 18, 1947—Rehearing denied Nov. 17, 1947.*

DANIEL S. WENTWORTH, and GEORGE P. FOSTER, both of Chicago, for appellant.

WILLIAM J. TUOHY, State's Attorney, JOSEPH F. GROSSMAN, Acting Corporation Counsel, GEORGE F. MULLIGAN, JR., FLOYD E. THOMPSON, and HENRY J. BRANDT, all of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook County overruling appellant's objection to the 1943 tax levied by the city of Chicago for the purpose of providing revenue for the Municipal Employees' Annuity and Benefit Fund of the city of Chicago, under the provisions of an act entitled "AN ACT to provide for the creation,

setting apart, maintenance and administration of a municipal employees' annuity and benefit fund in cities having a population exceeding 200,000 inhabitants." Ill. Rev. Stat. 1945, chap. 24, par. 1044 *et seq.*

The written objections filed by appellant against the tax were originally five in number. However, all but one were withdrawn by appellant upon the hearing in the court below. That objection, which was overruled and is involved in this appeal, is as follows: "The Statute creating said fund violates section 9 of article IX of the constitution of 1870 for the reason that it attempts to vest the power of taxation in other than the corporate authorities of the city and to give to the Retirement Board of said fund the power to impose upon the City obligations to be paid by taxation. The levy is therefore unauthorized and void."

The statute in question creates a municipal employees' annuity and benefit fund in cities having a population of more than 200,000 inhabitants. It provides for annuity and disability benefits for municipal employees employed by such city, civil service commissioners of such city, municipal employees employed by the retirement board of such annuity and benefit fund, and widows and children of such municipal employees and civil service commissioners, all of which annuities and benefits are to be paid from the fund created by the act. Provision was made in the act for the administration of this fund by a board of trustees, called a "Retirement Board," consisting of five members. Certain duties in connection with the maintenance of the fund were imposed by the act upon the retirement board and certain duties in connection therewith were imposed upon the city and its officers. The method provided for raising the revenue necessary for the creation and maintenance of said fund was by deductions from the salaries of the employees and by the imposition of a tax levied by the city council of the city.

Section 11 of the act, as it stood at the time the tax here objected to was levied, provides, in part, as follows:

"It shall be lawful for any such city to levy a tax upon all taxable property in such city for the purpose of providing revenue for the annuity and benefit fund herein provided for. Such tax may * * * be not more than seventeen-twentieths (17/20) of one mill, on the dollar annually of the assessed valuation of all taxable property in such city.

"For such purpose * * * the city council of such city shall levy such a tax annually upon all taxable property in such city at the rate on the dollar of the assessed valuation of all such taxable property that will produce a sum which, when added to the amounts deducted from the salaries of the municipal employees included under the provisions of this act and applied to the annuity and benefit fund herein provided for, will be sufficient for the purpose of said fund in accordance with the provisions of this act. Said tax shall be levied and collected in like manner with the general taxes of such city, and shall be in addition to all other taxes which such city is * * * authorized to levy upon the aggregate valuation of all taxable property within such city, and shall be exclusive of and in addition to the amount of tax such city is * * * authorized to levy for general purposes under and by virtue of any law or laws which may limit the amount of tax which such city may levy for general purposes. * * *

"The amount of the tax to be levied in each year shall be certified to the city council of such city, by the retirement board of the annuity and benefit fund herein provided for." Ill. Rev. Stat. 1941, chap. 24, par. 1054.

Appellant concedes the power of the legislature to provide a system of benefits and annuities for municipal employees becoming disabled or superannuated and the widows and children of such employees. He also concedes the power of the legislature, within constitutional limits, to

provide that such a system be, in part, supported by taxation, but contends that the method provided in the act now under consideration for determining the city's contribution thereto and the amount of such tax exceeds the legislative power. The contention of appellant is that the act vests in the retirement board the absolute power to fix and determine the amount of the tax to be levied, that the city council is without any discretion in the matter but must levy the amount so fixed and determined by the board, that the right to thus fix and determine is equivalent to the right to levy, and that the legislature had no power to vest the levying of this tax in the retirement board, the members of which are admittedly not the corporate authorities of the city. The answer of appellee is that the retirement board has no such power, that its power in the matter is advisory merely, and that the city council is invested with a discretion as to the amount or amounts which shall be levied under the provisions of the act.

It is clear from the provisions of section 11 above quoted that it is the city council and not the retirement board who makes the final and ultimate determination of the amount of the tax. The city council is charged by the act with the duty of levying the tax. It is directed to levy such tax, not in the sum certified to it by the retirement board as the amount of the tax to be levied, but in such sum which, when added to the sums deducted from the salaries of municipal employees, will be sufficient for the purpose of such fund in accordance with the provisions of the act. Neither this section nor any other section of the act specifies that the tax levied by the city council shall be in the sum certified by the retirement board as the amount of the tax to be levied. The act nowhere states that the amount certified by the retirement board must be the amount levied by the city council. If the legislature had intended that the board should have the absolute power to fix and determine the amount of the tax to be levied

and that the council should have no discretion whatever in the matter, it is only reasonable to suppose that the legislature would, in that event, have directed the council to levy the sum certified by the board instead of directing it to levy a sum "sufficient for the purpose of such fund in accordance with the provisions of the act." This language makes it apparent that the action of the retirement board in determining and certifying to the city council the amount of the tax to be levied is merely advisory to the council and that it is the council and not the board, to whose discretion is committed the final determination as to the amount of the tax which is levied. The amount which is levied may be that certified by the board or it may be more or less than the amount certified, depending upon whether the council, in the exercise of its discretion, decides that the amount certified, when added to the sums deducted from the salaries of municipal employees, will be sufficient for the purposes of the fund in accordance with the provisions of the act, or whether the council, in its discretion, decides that a greater or smaller sum is sufficient.

The provision of section 11 that "said tax shall be levied and collected in like manner with the general taxes of such city" also leads to this same conclusion, when the manner in which such general taxes are levied is considered. Section 1 of article 16 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1945, chap. 24, par. 16-1,) prescribes the manner in which the general taxes of the city are levied by the corporate authorities of the city. No tax can be levied for any purpose unless an appropriation for such purpose has been legally made, and the amount of the levy cannot exceed the amount of the appropriation. Such appropriations can be legally made only in and by an appropriation ordinance which the corporate authorities of the city are required to pass. Section 1 of article 22 of the Revised Cities and Village Act (Ill. Rev. Stat. 1945, chap. 24, par. 22-1,) prescribes the manner in which mu-

nicipalities with a population of more than 500,000 are required to make such appropriations, and section 1 of article 15 of the same act (Ill. Rev. Stat. 1945, chap. 24, par. 15-1,) prescribes the manner in which appropriations are to be made in municipalities with 500,000 or less inhabitants. In each case an appropriation ordinance is to be passed by the corporate authorities of such municipality, and the appropriations which it contains are required to be made by such corporate authorities. It is apparent that no tax can be levied by any city for any purpose unless the corporate authorities of such city first determine the amount required for such purpose and appropriate such amount to such purpose, and that after such amount has been so determined and appropriated, then the corporate authorities may levy a tax not to exceed the amount appropriated. (Ill. Rev. Stat. 1945, chap. 24, pars. 16-1, 22-1, and 15-1.) These sections of the Cities and Villages Act, when construed in connection with section 11 of the Municipal Employees' Annuity and Benefit Fund Act, sustain appellee's theory that it is the city council and not the retirement board who determines the amount of the tax, and that the amount certified by the retirement board is but advisory to the city council, the council being left with discretion to determine the amount and levy the tax and being in no way commanded to levy the amount certified by the board.

Appellant relies on *People ex rel. Gallenbach* v. *Franklin,* 388 Ill. 560, but in that case the act held void required each of the various municipalities throughout the State which were subject to the act to contribute to the payment of the expenses incurred by a supervisory board for the benefit not only of the municipality levying the tax but for the benefit also of the other municipalities subject to the act and moneys raised by taxation under the act in one taxing district were distributed for the use and benefit of other taxing districts. The act created a general benefit

fund to which each city was required to contribute. The result was that a city in which no benefits were paid was compelled to contribute to the benefits paid by all other cities within the provisions of the act. While this court in the case of *People ex rel. Kroner* v. *Abbott*, 274 Ill. 380, at page 385, cites with approval the rule in the majority of jurisdictions that the legislature has power to require municipalities to pension their employees and raise funds for that purpose, this court has never in any case approved or recognized the power of the legislature to require one municipality to raise funds to be used to pension the employees of other municipalities.

Appellant contends that the Municipal Employees' Annuity and Benefit Fund Act, in requiring the city to raise funds by taxation for the purpose of paying annuities and benefits to employees of the board of education of the city, is requiring a tax to be levied by one municipality for the use and benefit of another municipality. This requires a consideration of the relation which the board of education of the city of Chicago sustains to the municipal government of that city, since we take judicial notice of the fact that Chicago is the only city in the State with a population exceeding 200,000 inhabitants. By the charter of the city of Chicago of 1863, the officers of the city included a board of education, consisting of fifteen school inspectors elected by the common council. (*People ex rel. Post* v. *Healy*, 231 Ill. 629.) Pursuant to an election held April 23, 1875, the city of Chicago became incorporated under the General Cities and Villages Act of April 10, 1872. (*People ex rel. Schlaeger* v. *Brand*, 389 Ill. 298.) That act, however, contained no provision whatever concerning schools. The whole subject matter of schools was covered by another act entitled "An act to establish and maintain a system of free schools," passed by the legislature in 1872. The effect of the organization of the city of Chicago under the general law was to substitute the provisions of the

74

general school law for the provisions of the special charter insofar as the two acts were inconsistent, but to leave unrepealed and continued in force all provisions of the special charter relating to schools which were not inconsistent with the general law. (*People ex rel. Post* v. *Healy*, 231 Ill. 629; *Brenan* v. *People ex rel. Kraus*, 176 Ill. 620.) In 1889 the School Law of 1872 was repealed by an act which constituted a complete code and revision of the entire subject of free schools. These School Laws of 1872 and 1889 each provided for the organization and regulation of boards of education in cities having a population exceeding 100,000 inhabitants. This included Chicago. During the time these laws were in effect this court held that the board of education of the city of Chicago was a department of the government of the city, although in some points of view it was to be regarded as an independent municipal corporation. (*Brenan* v. *People ex rel. Kraus*, 176 Ill. 620; *McGurn* v. *Board of Education of. City of Chicago*, 133 Ill. 122.) In *People ex rel. Vaughn* v. *City of Chicago*, 227 Ill. 445, and *Brenan* v. *People ex rel. Kraus*, 176 Ill. 620, it was held that the board of education of the city of Chicago is connected with, dependent upon and, to some extent, a part of the municipal government of the city, and that therefore its officers and employees were within the operation of the Civil Service Act applicable to the employees of the city. In 1909 the legislature again repealed the existing School Law and enacted a new statute entitled "An act to establish and maintain a system of free schools." This act did not substantially change the relation of the board of education of the city of Chicago to the municipal government of that city. In 1917 the general School Law was amended to provide, *inter alia,* that "each city having a population exceeding 100,000 inhabitants shall constitute one school district, which shall maintain a thorough and efficient system of free schools, which shall be under the charge of a board of education, which

shall be a body politic and corporate, by the name of 'Board of Education of the City of . . .,' and by that name may sue and be sued in all courts and places where judicial proceedings are had." (Laws of 1917, p. 724.) In 1945 the general School Law of 1909 was repealed and the School Code of 1945 was adopted which constituted a complete code and revision of the general School Law. Section 2 of article 34 of this statute provided: "Each city having a population exceeding 500,000 shall constitute one school district which shall maintain a system of free schools under the charge of a board of education. The district shall be a body politic and corporate by the name of 'Board of Education of the city of . . .' and by that name may sue and be sued in all courts and places where judicial proceedings are had." (Ill. Rev. Stat. 1945, chap. 122, par. 34-2.) However, nothing contained in either the 1917 amendment to the School Law or in the 1945 School Code has any tendency to change the ground of our holding that the board of education is a part of the municipal government of the city. The principal provisions of the School Law upon which that conclusion was reached have been continued in the statute substantially the same as they were when these decisions were rendered. The mere fact that the legislature saw fit to create the city into a school district and make the board of education of the city a body politic and corporate, with power to sue and be sued, does not authorize the conclusion that such board is no longer a part of or connected with the municipal government of the city. This did not so change the School Law as to prevent the board of education from continuing to be a department of the city government. Even before the 1917 amendment, the board had the power to sue and be sued, (*City of Chicago in trust for use of Schools* v. *City of Chicago,* 207 Ill. 37,) and was regarded in some points of view as an independent municipal corporation. (*Brenan* v. *People ex rel. Kraus,* 176 Ill. 620; *McGurn* v. *Board of Education*

*of City of Chicago,* 133 Ill. 122.) The board of education of the city of Chicago is a part of the municipal government of the city to such extent that the Municipal Employees' Annuity and Benefit Fund Act, in requiring the city to raise funds by taxation for the purpose of paying annuities and benefits to employees of the board of education, does not require a tax to be levied by one municipality for the use and benefit of another separate and distinct municipality.

The Municipal Employees' Annuity and Benefit Fund Act was passed by the General Assembly in 1921 and the validity of its taxing provisions was never questioned until appellant did so in this case. Taxes have been levied and collected under the act for more than a quarter of a century during which time important monetary and human rights have accrued. While the passage of time is not conclusive as to the validity and constitutionality of a statute, it creates a strong presumption against its invalidity. (*People ex rel. Christensen* v. *Board of Education,* 393 Ill. 345.) A court is never warranted in declaring a legislative enactment void unless it clearly and palpably transcends the fundamental law. (*People ex rel. Curren* v. *Schommer,* 392 Ill. 17.) These are well-established rules which a court should keep always in mind when called upon to declare invalid an act of the law-making body.

We have considered the argument presented by appellant in support of the errors assigned upon the record here, having in mind that a statute is entitled to the benefit of every reasonable intendment in favor of its validity, and are constrained to hold that the judgment of the county court is correct.

The judgment of the county court is affirmed.

*Judgment affirmed.*