(No. 33537.—

THE CITY OF WAUKEGAN, Appellee, *vs.* JOSEPH M. STANCZAK *et al.,* Appellants.

*Opinion filed September 23, 1955—Rehearing denied Nov. 21, 1955.*

J. E. Bairstow, of Waukegan, for appellants.

Gerald C. Snyder, of Waukegan, (Lewis D. Clarke, of counsel,) for appellee.

Mr. Chief Justice Hershey delivered the opinion of the court:

The appellee, city of Waukegan, incorporated in 1859 by special charter with a coextensive school district, filed a petition in the circuit court of Lake County to condemn certain lands for a school building. The school board, by resolution, had selected the site and requested the action, and the city council, by ordinance, had authorized the proceedings under the eminent domain powers of special charter school districts. There was no referendum on the selection of the site. After a trial, the jury fixed the just compensation at $35,000. Judgment was entered on the verdict, vesting fee simple title in the appellee, and appellants, the original owners, appeal.

Since the title to the real estate is in issue, a freehold is involved and this court has jurisdiction on direct appeal.

The appellants below filed a motion to dismiss and traverse, which, after a hearing by the court, was denied prior to the trial on the merits.

Certain alleged errors for reversal are here assigned and argued by the appellant, the first three of which have to do with the order of the court in denying the motion

to dismiss and traverse. The first of these alleged errors is that the petition to condemn was insufficient since it lacked certain jurisdictional allegations regarding the necessity for taking the property. In support of this contention the appellants assert that the power to take private property is limited to cases of necessity, which necessity must be shown in the petition to condemn.

The law is well established that the power to take private property is limited to cases of necessity, and the petition must contain allegations to that effect. (*Inter-State Water Company* v. *Adkins,* 327 Ill. 356; *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581.) When these allegations are denied by the defendant, the burden is placed upon the petitioner to establish the fact. *City of Chicago* v. *Lehmann,* 262 Ill. 468.

The position of the appellants apparently is that the petition has defects going to the jurisdiction in that there is neither an allegation of necessity as such nor an allegation of facts demonstratively showing such necessity. They seem to claim that the very word "necessity" or "necessary" must be used.

An examination of the petition discloses that neither the word "necessity" nor the word "necessary" is used in any of the allegations, but the petition does contain an allegation that the school district "requires" the property in question. Appellee contends that its allegation is proper, because the statute giving a special charter district the right to condemn uses the word "requires" instead of "necessity" or "necessary" and that the allegation in the petition is correct. (Ill. Rev. Stat. 1953, chap. 122, par. 32-30.) Furthermore, the word "necessary" is an expression for what is requisite; a "necessity" is a "requirement"; to "require" is to "need." The words are synonymous, and to allege that premises are "required" is a sufficient allegation that they are "necessary." (Webster's New Inter-

national Dictionary, Second Edition.) The word "require" used in the petition was all the statute called for—all that was needed or required.

The second contention of the appellants (that the petition should also allege facts showing the need or requirement of said property) is likewise without merit. This same question was presented to this court in *Decatur Park District* v. *Becker*, 368 Ill. 442, and we held that the petition was sufficient and should not be dismissed on motion. The cases cited by the appellant, *Inter-State Water Company* v. *Adkins*, 327 Ill. 356, and *Department of Public Works* v. *Lanter*, 413 Ill. 581, are as to this contention not in point because the question presented there concerned the proof of the necessity and not the sufficiency of the allegation in the petition. On both points, therefore, there is no merit in the contention that the petition is insufficient or jurisdictionally defective.

The second alleged error assigned and argued in support of the motion to dismiss is that no election was held to locate the site. This is a multiple proposition, the most serious allegation of error made, and involves several questions: First, was the city and hence the district a special charter city and district under the 1859 act or did the city's adoption of the Cities and Villages Act in 1890 bring it under general city law, and if so, the school under general school law? If the latter, there is no question but that the site should have been selected by referendum. (Ill. Rev. Stat. 1953, chap. 122, par. 7-17.) Second, if the city remained a special charter city, and hence the district a special charter district, could it select a site by resolution without referendum and did it have power to condemn?

The 1859 charter act (Laws of 1859, p. 347 *et seq.*) incorporates and bounds the city of Waukegan, creates a coextensive school district, vests the city with school property and responsibility, delegates this to the city council

which may administer through a superintendent, and empowers it "To erect, hire, or purchase buildings" and "To buy or lease sites" for schools.

The general school law, now set forth in the School Code, (Ill. Rev. Stat. 1953, chap. 122, pars. 7-1 through 7-23,) puts government of districts *not governed by special acts* in seven-member school boards, and grants their powers (sec. 7-14,) including eminent domain power to condemn. (Sec. 7-17.) The same section granting condemnation power contains the restriction that sites may be selected only by referendum. While the phrase "not governed by special acts" appears only in section 7-1 of article 7, this is the section providing for seven-member boards, and the section in question (requiring selections by referendum and providing condemnation powers) is a limited grant to such boards of such districts—that is, districts not governed by special acts. We consider the limitation requiring referendum selection applicable only to general school board districts, and the exception of special charter districts from section 7-1 to apply to the entire article 7, including the site-selection and eminent-domain section.

Section 14-7 of the School Code is a general condemnation statute, granting the eminent domain powers of general districts, and says nothing about how sites should be selected.

Now, the power of a special charter district to select school sites and the power to secure such a site by condemnation must be found in its charter act, or in a supplementary act granting such districts powers additional to those given in its charter.

The 1859 charter act granted power "To erect, hire or purchase buildings" and "To buy or lease sites" for schools. It also provided the city council power "generally to have and possess all the rights, powers and authority necessary for the proper management of schools and the school lands and funds belonging to the said school district, with power

to enact such ordinances as may be necessary to carry their powers and duties into effect."

If the power to erect, hire, and purchase buildings, and to buy or lease sites does not expressly include the power to select such sites, it does so by necessary implication, buttressed by the general provision of necessary powers set forth. *Schmohl* v. *Williams,* 215 Ill. 63.

The power of such special charter districts to condemn is found in section 32-30, specifically granted. This is an eminent domain provision for special districts and it is granted without the referendum-site-selection restriction of the general provision.

*School Directors* v. *Fogleman,* 76 Ill. 189 (in which no election was held) ; *Trustees of Schools* v. *Hoyt,* 311 Ill. 532 (in which an election was void due to petition record defects) ; and *Bierbaum* v. *Smith,* 317 Ill. 147 (in which the election was void by lack of posted notice) did not involve special charter districts, but general districts whose proceedings were defective. These cases cited by appellant are therefore not in point.

*Dutton* v. *City of Aurora,* 114 Ill. 138, holds only that a general law granting waterworks construction and taxing powers is an additional grant to all cities and to the extent of the grant an implied repeal of a special charter city's tax limitations. Citing this case, the appellants argue ingeniously that the exception of certain large general districts from the general school law's site-selection-referendum requirement implies that this is the only exception. (Ill. Rev. Stat. 1953, chap. 122, par. 7-17.) But the *Dutton case* does not so hold, and the argument is a *non sequitur.*

As to whether the city's adoption in 1890 of the Cities and Villages Act brought it under general city law and the school district under general school law, we would feel justified in not considering the point since no evidence was presented regarding it. However, the appellants refer to the Secretary of State's official list of incorporated munici-

palities and ask for "judicial notice" here (which was not asked below). And the appellee meets the matter on the law rather than the lack of proof of the fact. Furthermore, the point is important to all special charter districts as well as the one concerned here. We have therefore reviewed the authorities and will restate the law, as if the fact of the 1890 action were fully proved or accepted.

*People ex rel. Post* v. *Healy,* 231 Ill. 629, *Brenan* v. *People ex rel. Kraus,* 176 Ill. 620, and *People ex rel. Schlaeger* v. *Jarmuth,* 398 Ill. 66, involve the effect of adoption of the Cities and Villages Act, but do not hold that such action completely abrogates such a special charter.

On the contrary, the law is generally that with charter districts in cities adopting the Cities and Villages Act, the general law abrogates only inconsistent special charter powers, and leaves "unrepealed and continued in force all provisions of the special charter * * * not inconsistent with the general law." (*People ex rel. Schlaeger* v. *Jarmuth,* 398 Ill. 66.) On the specific matter, *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Randle,* 183 Ill. 364, is directly in point, holding that the general law's increase in tax levy may apply to a city school district as inconsistent with the charter, while the district retains the power under the charter to select sites without referendum —the district thus enjoying the benefits of both the special charter and the general law. In such cases, when "These special laws contain no provision for submitting the question of the erection of a school house to a vote of the people, therefore no such vote was necessary." (See also *Lippincott* v. *Board of Education,* 186 Ill. 205.) *Schmohl* v. *Williams,* 215 Ill. 63, is conclusive to the effect that even under acts providing for election of board members in districts organized under special laws and maintaining public schools under the general school law, the special charter provisions for appointment still applied and the special

charter powers to select a site without referendum still adhered.

It thus appears, as appellee points out, that school districts may be under general law for many purposes and still under special charters for purposes not inconsistent with general provisions. And we hold that the district here was (1) operating under its special charter power to purchase buildings and buy sites, (2) exempt by sections 7-1 and 7-14 from the site-selection-referendum provisions of section 7-17, and (3) empowered under section 32-30 to secure a selected site by condemnation.

The appellants suggest that to interpret section 32-30 as not requiring an election to select the site "might be repugnant to section 22 of Article IV of the state constitution." No authority is cited for this proposition, and we have been unable to find a precedent to support it. On the contrary, it is well settled that the legislature may reasonably classify the objects of its legislation, and a law applying alike to all within the class is not precluded by this constitutional provision. (*Henson* v. *City of Chicago,* 415 Ill. 564.) As applied to schools, a reasonable classification of school units which applies alike to all units similarly situated has been held not to violate the section. (*People ex rel. Funk* v. *Hagist,* 401 Ill. 536.) Here, section 32-30 applies alike to all special charter districts and is thus uniform in its application and not invalid under our constitution. That the result of the classification is to grant special charter districts a power to condemn without first selecting a site by referendum, a power not enjoyed by districts under the general law rather than the statute in question, does not render the statute invalid. *Henson* v. *City of Chicago,* 415 Ill. 564.

The third alleged error assigned and argued in support of the motion to dismiss is that the property taken was excessive in area (15.2 acres) and in estate (fee simple instead of a determinable fee).

As to amount, condemning authorities have substantial discretion to take land sufficient not only for present needs but future requirements (*City of Chicago* v. *Vaccarro,* 408 Ill. 587,) which they can and should anticipate. (*Village of Depue* v. *Banschbach,* 273 Ill. 574.) Unless the discretion is abused or an area grossly excessive is taken (*City of Chicago* v. *Lehmann,* 262 Ill. 468,) the taking will not be disturbed.

Here the area is 15.2 acres for a seventh and eighth grade school building housing 810 pupils. There is evidence that a seventh and eighth grade unit is considered a secondary school, and for such a school an accepted education formula for adequate facilities is 10 acres plus one additional acre per 100 pupils, which here comes to 18 acres. The superintendent, qualified as an expert but credible likewise as an eyewitness and as the responsible managerial official concerned, gave his opinion that fifteen acres was a minimum, and "twenty acres would be better." Economic and community growth, home building, school population statistics, and predictions based on lower-grade enrollments show prospects of 1400, possibly 1700, seventh and eight grade pupils in five or six years. Faced with such fecundity, the school administrators have indeed a duty to anticipate future needs. Even for present requirements, not to mention the future, the area taken was not shown to be excessive in amount.

As to the estate taken, the State or its municipal delegatee, may take any property, if for a public purpose, so long as it provides just compensation. Subject to these constitutional requirements, the estate or quantum of interest taken may be the maximum interest in property, the fee simple absolute, if the legislature so determines. (*Sanitary District* v. *Manasse,* 380 Ill. 27.) In a given case, the grant of condemnation power in the statute, or, lacking an express definition of the interest to be taken, the absolute needs of the public purpose, may control the quantum to be

taken, (*Miner* v. *Yantis,* 410 Ill. 401,) and where a condemnation statute does not expressly grant power to take a fee simple absolute, then a determinable fee, easement, or lesser interest may be all that may be taken. *Superior Oil Co.* v. *Harsh, D.C.* 39 F. Supp. 467; *Miller* v. *Commissioners of Lincoln Park,* 278 Ill. 400.

What, then, of the quantum which could be taken for school purposes under the statute here?

The appellee here had power "To erect, hire, or purchase *buildings* * * *; To buy or lease *sites* * * * with the *necessary grounds;* * * * to have and possess all the rights, powers, and authority necessary for the proper management of schools and the *school lands* and funds belonging to the said school district" (City Charter, sec. 37) ; "to grant, bargain, sell, convey, lease or dispose of any *property, real* or personal * * * vested in [it]" (sec. 32) ; and "to *take, hold and purchase such real estate* as they may desire, and use, lease, sell, dispose of and convey the same for the benefit of the city, and may do all other acts which natural persons can do to carry out and accomplish the purposes intended by this act." (Sec. 1.) (Emphasis added.) The condemnation statutes (Ill. Rev. Stat. 1953, chap. 122, pars. 32-30 and 14-7) both provide for the taking of a *"lot or parcel of land."*

Where the power to take is a power to take "real property," the grant authorizes taking "all interest held or claimed in lands in fee, for life or for years," including a fee simple interest. (*Sanitary District* v. *Manasse,* 380 Ill. 27.) So also for "real property." (Black, Law Dictionary, West, 1951, p. 1383.) And "lands" are synonymous with "real estate" and "real property." Black, *ibid,* p. 1019.

With the interest contemplated by the charter, including "buildings * * * sites * * * grounds * * * lands * * * property, * * * real estate" and with the functions authorized, including power to "purchase * * * buy * * * lease * * * manage(ment)

* * * sell * * * dispose * * * take * * * hold
* * * convey * * * and * * * do all other acts
which natural persons can do," it is difficult to see how
less than a full quantum was intended, including fee simple
absolute. A contention that power to acquire "real estate"
for school purposes was limited to an easement or deter-
minable fee was expressly refuted in the *Miner case*.

Accordingly, we hold that the grant of power here in-
cluded the power to take a fee simple, and the award vest-
ing fee simple title was not excessive in quantum of estate.
*Sanitary District* v. *Manasee,* 380 Ill. 27; *Miner* v. *Yantis,*
410 Ill. 401.

It is therefore apparent that none of the propositions
assigned and argued in support of the motion to dismiss
and traverse constituted error, and that the trial court prop-
erly overruled the motion. What has been said on these
points concerning the motion to dismiss applies alike to the
same points in the motion in arrest of judgment and to
objections in the course of the trial preserving the defend-
ant's contentions.

All other matters assigned and argued as errors relied
on for reversal had to do with the trial.

The first of these alleged errors is that the court erred
in admitting or excluding evidence on four points: the
laying, in the presence of the jury, of the preliminary foun-
dation for proof of sale of other property; the admission
of evidence as to the sale of a certain "Y.M.C.A." tract;
the exclusion of evidence of a sale of a certain other tract,
containing $^{44}/_{100}$ of an acre; and the exclusion of evidence
of an offer to buy.

The "Y.M.C.A." tract, on which sale evidence was ad-
mitted, and the tract in question were alike in many material
aspects; both in the city, about a mile from the city limits
(one north, one south), both zoned for residence, both
vacant, both usable for business but best used for sub-
division, both fronting on Lewis Avenue, one 20 acres and

one 15.2 acres, both bounded on one side by buildings, vacant on the other. Appellants argue that the compared tract is below grade, subject to floods, has a ravine in it, and the tract taken is all high land. But the record shows that the ravine is only a ditch, and of the two, the tract taken has the watercourse and had two and a half feet of water standing in one corner. Their separation of two and a half miles in the same city would not render them dissimilar, and considering all the evidence, particularly that concerning drainage, we do not find any such dissimilarity as to make it error to admit the sale price of the compared tract.

The contrary situation exists regarding the $44/100$ of an acre, which was sold for a clubhouse. Neither in size nor potential use was there similarity, and while size alone may, in a case of similar use, be no basis for excluding evidence of comparative sales, where the size is less than $1/30$ of the tract in question and a different use involved, we cannot say it was error to exclude such a varied comparison.

Appellants claim error in the exclusion from evidence of an offer by the school district to buy the property in question for $40,000, and argue that as an offer by the owner to sell can be shown as an admission against interest, the offer by the condemning authority to buy should also be admissible, because the rule should work both ways. Appellee's answering argument, however, is persuasive: that the condemnor's offer is a requisite to showing that the price cannot be agreed on; that it is often a premium price for quick acquisition in the public interest; and that to make it admissible would penalize the condemnor (and the taxpaying public) for taking necessary steps. We hold that evidence of the condemnor's offer to buy was properly excluded. See *Metropolitan Street Railway Co.* v. *Walsh,* 197 Mo. 392, 415, 94 S.W. 860.

The next allegation of error assigned and argued is

based on conduct of counsel. This likewise cannot be sustained. Counsel's interrogation of jurors as to how many children they had or whether they attended school was not preserved in the record nor apparently was any objection made. Counsel's argument concerning the right to educate children was stricken, and in any event was not so extreme as to be inflammatory. Counsel's remark about one witness being a real-estate salesman not required to be licensed was properly stricken, a miscue which if it affected the jury at all would have affected it with disfavor toward the condemnor whose counsel made the remark.

The last alleged error assigned and argued is that the court erred in instructing the jury. It is said that the court improperly refused appellants' instruction 22, amplifying the definition of fair cash market value by stating that the desirability of the improvement or the importance of the duties of the petitioner are not to be considered as diminishing the award. We are of the opinion that the instruction added little, if anything, to the proper definition given by other instructions, and was argumentative. Therefore, the refusal to give this instruction was not error. Another instruction, No. 5, tendered by appellee, was given after the appellants' counsel stated specifically "no objection," which was noted of record. The last instruction, questioned by the appellants, was given after their counsel had stated that it "seems to read all right down this far," the objection being to a portion of the instruction beyond the point of consent. But in this court, on review, the appellants argue only concerning the first portion of the instruction, which in the trial court their counsel approved. In the circumstances, the appellee's assertion that the appellants cannot complain of an error which they have induced the trial court to make and to which they expressly consented of record is well taken. (*Cf. Sundene* v. *Koppenhoefer,* 343 Ill. App. 164, 169; *Johnson* v. *Luhman,* 333 Ill. App. 418, 425.) At all events, we have considered the instructions at

length and believe the jury was fairly and fully instructed.

The jury, in addition to the evidence offered, viewed the premises. The final verdict was $35,000, within the range of the evidence, between the low of petitioner's figures, $22,800 to $30,400, and the high of appellants', $60,000 to $75,000.

On the whole record, we consider the case fairly tried, ably presented by counsel for both sides, and the jury fully and properly informed by the evidence and instructed regarding their verdict.

The judgment below is therefore affirmed.

*Judgment affirmed.*