THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD VAN WINKLE, as member of the Board of Education of the City of Springfield, School District No. 186, Defendant-Appellant.

(No. 11702;

Fourth District—May 8, 1972.

*Rehearing denied June 7, 1972.*

TRAPP, P. J., specially concurring.

James M. Drake, of Springfield, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, for the appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

In 1854 the Illinois Legislature enacted a law which created a special charter school district for the city of Springfield. The charter for this special district, now known as Springfield School District No, 186, was amended in 1869 and has served the City of Springfield until the present time. On September 7, 1971, one of the members of the Board of Education, Mr. L. William Murrell, tendered his resignation to the Board for reasons not disclosed by the record. His resignation was accepted by the

Board and a motion was made to appoint the Defendant, Richard Van Winkle, to fill, until the next election, the vacancy created by Mr. Murrell's resignation. This motion carried and the Defendant took his place as a member of the Board of Education.

The State's Attorney for Sangamon County filed a complaint in *quo warranto* against the Defendant on October 8, 1971, alleging that the Board of Education had no power to fill vacancies by appointment and, therefore, the Defendant was holding office without legal authority. The Defendant filed an Answer and Plea of Justification stating that under section three of the Special Charter the Board of Education had the power to fill vacancies by appointment. Subsequently, the Board of Education of Springfield School District No. 186 (hereinafter referred to as Board or Board of Education) was granted leave to intervene as *amicus curiae*. Briefs were filed by the parties and trial was held on November 3, 1971. On November 12, 1971, the trial judge entered an Order granting the relief sought in the Complaint. For the reasons expressed herein, the order appealed from is reversed.

Section three of the special charter of the City of Springfield, as amended in 1869, provides as follows:

"*Section 3.* The city council of the City of Springfield shall, on the first Monday of May, 1870, and on the first Monday of May, annually, thereafter, elect successors to those members whose terms of office are then expiring, and the persons so elected shall hold their offices for three years and until their successors are elected and qualified. The said board of education, or the remaining members thereof, shall have power to fill, until the ensuing annual election, all vacancies in said board occasioned by death, resignation, disqualification, failure to elect, or removal from said district: Provided, no member of the city council, or any person holding office under the city, whether elected or appointed, shall be a member of the board of education."

Several observations can be made of this particular statute. First, this section gave the Board the power to fill all vacancies in the Board occasioned by the resignation of a Board member—the exact factual situation presented by this appeal. Second, the section treats the terms "resignation" and "disqualification" separately thereby indicating that the Legislature felt that these two terms embodied different concepts. Third, section three only empowers the Board to fill a vacancy by appointment until the next "ensuing annual election." The Board was not given the power to fill the unexpired term of the resigning member by appointment. Consequently, if section three of the special charter was the only legislative enactment that we were called upon to consider, the Board's action in appointing the Defendant would pose no problem.

However, in its usual inimitable style the Legislature enacted the School Code of 1961 Article 32 of which covers special charter districts. Section 32—2.5 and 32—2.6 (Ill. Rev. Stat., ch. 122, sec. 32—2.5, 32—2.6) of the Code declare as follows:

"32—2.5. Election of Board of Education in lieu of appointive board.

In all special charter districts having a population of over 35,000 by the last federal census, where the board of directors or board of education is elected or appointed by the city council of the city, of which school district such city may form the whole or a part, and where there are no provisions in the special charter creating such school district for the election of a board of directors or board of education, there shall be elected in lieu of the present governing body a board of education to consist of 7 members. Nomination of a candidate for member of the board of education shall be made by petitions signed in the aggregate by not less than 200 qualified voters residing in the school district, and also by filing with the petitions a statement of candidacy as provided in Section 10—5 of The Election Code, which petitions and statements of candidacy shall be filed in the office of the board of education not more than 60 days nor less than 35 days prior to the day of holding the election.

32—2.6. Election—Vacancies—Names on ballots

All elections in school districts described in Section 32—2.5 shall be conducted in accordance with the provisions of Article 10 of The Election Code so far as they may apply and may not be inconsistent with other provisions of this Article. If any member of the board of education is disqualified to hold office, the board of education may, by resolution, declare the office vacant, and provide for the holding of an election to fill the vacancy for the unexpired term. The nomination and election of a candidate to fill the vacancy shall be made in the same manner as the nomination of a candidate for a regular term, as hereinbefore provided, except that there shall be printed on the ballot that the election is for a certain number of persons for a certain number of years to fill a vacancy, and a separate ballot shall be used for such election. The names of all candidates for member of such board of education shall be printed on the ballot in alphabetical order according to their surnames, and shall likewise be certified by the board of education to the board of election commissioners, if any."

Both of these sections are binding upon the district in question since it has exceeded 35,000 population for over fifty years.

■■ The intent of section 32—2.5 is clear—it was enacted to give the voters of a special charter district a direct voice in the election of their board of education. A similar legislative intent can be observed in those

244

sections of the School Code dealing with school trustees (Ill. Rev. Stat., ch. 122, sec. 5—2), boards of school directors (Ill. Rev. Stat., ch. 122, sec. 10—1) and boards of education governed by the general school code (Ill. Rev. Stat., ch. 122, sec. 10—10). Under section two of the special charter in question the board of education of the City of Springfield was to consist of nine members from different wards of the city elected by the city council. Section 32—2.5, therefore, repealed section two of the charter with respect to the total number of board members and their manner of election. However, since it was stipulated by the parties to this appeal that since 1911 the Board of Education has consisted of seven members elected by the voters rather than nine members elected by the city council section 32—2.5 had the practical effect of simply ratifying a procedure already in existence.

It is apparent that the Legislature intended to implement, at least in part, the requirements of section 32—2.5 through the enactment of section 32—2.6, quoted above, which established the manner in which such elections are to be held and which made certain provisions in the event a vacancy occurred on the board. It is the language of section 32—2.6 pertaining to vacancies which precipitated this appeal. In part, section 32—2.6 states that "[i]f any member of the board of education is *disqualified* to hold office, the board of education may, by resolution, declare the office vacant, and provide for the holding of an election to fill the vacancy for the unexpired term." (Emphasis added.) (Ill. Rev. Stat., ch. 122, sec. 32—2.6.) The People argued, and the trial court agreed, that this provision of section 32—2.6 relating to vacancies was all-inclusive and completely pre-empted the power of the Board to fill vacancies by appointment under the authority granted to it by section three of the special charter. The narrow legal issue we are called upon to decide, therefore, is whether the power to appoint in the event of resignation set forth in section three of the special charter has been nullified by the passage of section 32—2.6 of the School Code.

■■ Initially, we note that the special charter and the School Code are legislative enactments which are *in pari materia*. As such, they must be construed together and every effort must be made to reconcile the two acts and harmonize any seemingly inconsistent provisions. This principle was recognized in *People ex rel. Bell v. New York Central R.R. Co.* (1957), 10 Ill.2d 612, 621, 141 N.E.2d 38, where the Supreme Court remarked:

"Both the special charter and the general school laws pertain to the maintenance and operation of schools. Such acts, be they general or special, which relate to the same subject or object, are *in pari materia*

although they were enacted at different times. It is a primary rule of statutory construction that not only should the intention of the legislature be deduced from a view of the whole statute and from its every material part, but statutes *in pari materia* should be construed together. *People ex rel. Harrell v. Baltimore and Ohio Railroad Co.*, 411 Ill. 55, 59; *People ex rel. Tilley v. New York, Chicago and St. Louis Railroad Co.*, 364 Ill. 456; *People v. Wallace*, 291 Ill. 465, Cf. *Rosehill Cemetery Co. v. Lueder*, 406 Ill. 458, 465 and 466. * * * The enactment of general laws relating to the maintenance and operation of public schools would not abrogate the provisions of special charters, not inconsistent with such general laws. * * * There is and must be an accommodation between the not inconsistent provisions of the special charter and general law."

See also, *People ex rel. Killeen v. Kankakee School District No. 11* (1971), 48 Ill.2d 419, 421—23, 270 N.E.2d 36; *Ketcham v. Board of Education*, 324 Ill. 314, 317, 155 N.E. 332, ("It must be presumed that the several statutes relating to one subject are governed by one spirit and policy and that the legislature intended the several statutes to be consistent and harmonious.")

■■ Against the rule that statutes *in pari materia* must be construed together in an effort to accommodate and harmonize their provisions the People have argued that when a statute is amended and the amendment does not repeat the original statute in its entirety, those portions of the statute that are not repeated are repealed by implication. In support of this position the People have relied on certain language of the Court in *People ex rel. Cason v. Ring* (1968), 41 Ill.2d 305, 309, 242 N.E.2d 267. However, after noting the general rule of statutory construction relied on by the People the Court remarked further, at pages 309-10, that

"This general rule of construction cannot prevail * * * in cases where a contrary legislative intent is clearly evidenced, for being merely a rule for determining the intent of the legislature, it is not absolute and must yield when the intent of the legislature is otherwise indicated to be to the contrary—that the provisions of the original act or section which were omitted are not repealed. Such an intent of the legislature may be indicated or by a consideration of the amendatory act in its entirety, or by a consideration of the amendatory act and the unamended sections of the original act or code as a whole, or by contemporaneous legislation on the same subject *or by other circumstances surrounding the enactment of the amendment.* (Emphasis added.) Sutherland, Statutory Construction, Sec. 1932

(3d ed. 1943); *Roth v. Northern Assurance Co.,* 32 Ill.2d 40, 50; *Scribner v. Sachs,* 18 Ill.2d 400, 411; *People ex rel. Stahly v. Brady,* 273 Ill. 178, 183; accord, *Winter v. Hindin,* 33 Del. 294, 136 A. 280." Furthermore, it must be remembered that "repeals by implication are not favored, and it is only where two statutes are clearly repugnant to each other that the later one operates as a repeal of the former," *Klemme v. Drainage District No. 5* (1942), 380 Ill. 221, 223, 43 N.E.2d 966; *Krimmel v. Eielson* (1950), 406 Ill. 202, 205, 92 N.E.2d 767; and that "[i]t is well settled that a general law will not repeal a prior special act unless the two are irreconcilably inconsistent." (*Spaulding School District No. 58 v. Waukegan City School District No. 61* (1960), 18 Ill. 2d 351, 356, 164 N.E.2d 63.) It is equally clear "that school districts may be under general law for many purposes and still under special charters for purposes not inconsistent with general provisions." *City of Waukegan v. Stanczak* (1955), 6 Ill.2d 594, 603, 129 N.E.2d 751.) The rules relating to statutory construction, therefore, require us to reconcile the language of the special charter in question with the language of the School Code wherever possible.

■■ There is no doubt that section three of the special charter specifically gave the Board of Education the power to appoint members to fill vacancies created by the resignation of elected members. Furthermore, in section three the Legislature made a distinction between the terms "resignation" and "disqualification". As we have noted, section 32—2.6 of the School Code provides that if a member is "disqualified" then the Board "may declare" the office vacant and call an election to fill the unexpired term. Section 32—2.6 is silent on the power of the Board to fill a vacancy created by the resignation of an elected member. In light of these observations, we do not feel that section 32—2.6 of the School Code has repealed the Board's power of appointment in the event of resignation under section three of the special charter in question.

The result thus achieved is consistent with the general tenor and spirit of the School Code. (See *Ketcham v. Board of Education* (1927), 324 Ill. 314, 317, 155 N.E.2d 332.) For example, under section 32—1.2 the Board of Education of a special charter district is given the powers of school trustees. (Ill. Rev. Stat., ch. 122, sec. 32—1.2.) One of the powers given to school trustees is set forth in section 5—14 of the School Code which declares that "[w]hen a vacancy occurs in the office of trustee the remaining trustees shall within 30 days fill the vacancy by appointment until the next regular election." (Ill. Rev. Stat., ch. 122, sec. 5—14.) This is certainly consistent with the legislative intent shown in section three of the special charter. Again, in section 32—4.8 of the general

School Code the Legislature declared that the Board of Education of a special charter district "* * * shall have all the powers of trustees of schools in school townships and all the powers of boards of directors, and boards of education elected by virtue of this Act * * *." (Ill. Rev. Stat., ch. 122, sec. 32—4.8.) Boards of directors are given the power to fill a vacancy by appointment under section 10—4 of the School Code, (Ill. Rev. Stat., ch. 122, sec. 10—4), and boards of education elected under the general law are given the same power in section 10—10. Ill. Rev. Stat., ch. 122, sec. 10—10.

Admittedly, by its own language, section 10—10 of the School Code does not apply to districts "governed by special Acts." This language has been held to exclude special charter districts such as the one under consideration from the coverage of section 10—10. (*City of Waukegan v. Stanczak* (1955), 6 Ill.2d 594, 600, 129 N.E.2d 751.) However, this fact does not alter the result achieved here since the Board of Education in question derives its power to appoint from section three of its special charter and does not rely on section 10—10. Still, the language of section 10—10 is another indicia of the intent of the Legislature to create a statutory scheme wherein the Board of Education is given the power of appointment to fill a vacancy in its ranks.

■■ Statutes *in pari materia* should, wherever possible, be reconciled rather than repealed by implication. Indeed, statutes relating to the same subject are presumed to be governed by a singular spirit and policy. Section three of the special charter of the City of Springfield gives the Board of Education the power of appointment when a vacancy occurs because of the resignation of a member. That power is not irreconcilably inconsistent with the language of section 32—2.6 of the School Code. Moreover, to the extent that the School Code confers a similar power on school trustees, boards of directors and boards of education elected under the School Code it is harmonious with the general spirit and intent of the School Code.

Accordingly, for the reasons expressed herein the judgment appealed from is reversed.

Judgment reversed.

SMITH, J., concurs.

Mr. PRESIDING JUSTICE TRAPP specially concurring:

I concur in the result, but for different or additional reasons.

The trial court concluded that by reason of the provisions of Ill. Rev. Stat. 1969, ch. 122, par. 32—2.6, the charter power of the Board to fill a vacancy by appointment until the next annual election was eliminated,

and that the only statutory means for filling such vacancy was by election.

Consideration of the statutory scheme of the School Code demonstrates that the exercise of the appointive power under the special charter is neither incompatible or in conflict with the provision at issue for election to fill a vacancy.

Art. 32 of the School Code (Ill. Rev. Stat. 1969, ch. 122, par. 32, *et seq.*), was designed to permit election of a board of education where the special charter for the district had provided for the election of members by a city council. Art. 32, in some specific instances and generally otherwise, is compatible with the scheme provided in Art. 10 of the School Code (Ill. Rev. Stat. 1969, ch. 122, par. 10.1 *et seq.*), which provides for the election of members of school boards in non-charter districts. It is noted that par. 32—1.5 provides specifically that members of the board of education are to be elected in the manner provided in Art. 10, and that such special charter board with elected members shall be organized as provided in Ill. Rev. Stat. 1969, ch. 122, par. 10—15.

Art. 10 of the School Code itself retains provision for the filling of a vacancy through appointment by the board members of a member to serve until the next annual election. (Ill. Rev. Stat. 1969, ch. 122, par. 10—10.) Such section further provides that upon failure of the board to appoint, there shall be a special election to fill the vacancy for the unexpired term.

Such statutory scheme contemplates appointment until the next annual election or election to fill the unexpired term as alternatives or options.

The recognition of the appointive power of this Board under the provisions of the special charter is consistent and compatible with the statutory scheme provided in the School Code for filling a vacancy under the general school law. The language of Par. 32—2.6 is permissive rather than mandatory in saying that the board of education may declare a vacancy and provide for a special election to fill the vacancy for the unexpired term. Rather than excluding appointment until the next annual election, such provision for election to fill the unexpired term supplements the charter provision in retaining the option to elect to fill the unexpired term rather than to appoint to the next annual election.

This construction makes it unnecessary to distinguish the word "disqualification" from the words death, resignation or removal from the district which are, in themselves, a form of disqualification.